12 So.2d 198

## REALTY OPERATORS, Inc., v. STATE MINERAL BOARD et al.

### No. 36617.

Dec. 30, 1942.

Rehearing Denied Feb. 1, 1943.

Plaintiff claims to be the owner of the bed and bottom of Lake Hatch by virtue of five certain patents issued by the State of Louisiana to plaintiff's authors in title and thereafter acquired by plaintiff at a sheriff's sale in a foreclosure proceeding entitled "Realty Operators Inc. v. Mary Minor Pipes et al." No. 10303 of the docket of the Seventeenth Judicial District Court for the Parish of Terrebonne. In its petition, plaintiff sets forth a complete chain of title, beginning with the patents issued by the State to John D. Minor, F. A. Bonvillian, Lewellyn Hatch, Winslow Hatch and R. H. Grinage, to its acquisition in the foreclosure proceedings against Mary Minor Pipes et al. The land acquired under the patents is a large tract located in Terrebonne Parish, composed in part of the following described property situated in Township 18 South, Range 16 East, to wit: "All of Section 11 (except the North ½ of the North west ¼) and all of Sections 12, 13 and 14 containing approximately 2480 acres".

Eugene Stanley, Attorney General, and C. C. Wood, Sp. Asst. Atty. Gen., for defendants-appellants.

Dufour, St. Paul & Levy and Dart & Dart, all of New Orleans, for plaintiff-appellee.

Herold, Cousin & Herold, of Shreveport, amici curiæ.

McCALEB, Justice.

The plaintiff, Realty Operators, Inc., seeks an injunction against the State Mineral Board, and its members and successors, to prevent the Board from granting a mineral lease to the bed or bottom of a body of water located in Terrebonne Parish, commonly known as "Lake Hatch".

It is averred by plaintiff that Lake Hatch lies wholly within the above-described sections and wholly upon those portions of said sections owned by it; that the lake is a shallow land-locked fresh-water lagoon which is not navigable; that its bottom or bed comprises approximately 400 acres; that the value of the oil, gas and other mineral rights therein exceed the sum of $6,000; that it is now and has been at all times, since the year 1934, in actual physical and peaceful possession, as owner, of the land on which the lake is located and that its vendors and their vendors enjoyed

a like possession thereof for at least twenty years prior to the date on which the suit was filed.

It is further alleged·that the defendants, the State Mineral Board and the members thereof, claiming to act by virtue of and pursuant to the provisions of Act No. 93 of 1936, have advertised for and solicited sealed bids for the leasing of the oil, gas and other mineral rights to the bottom and bed of Lake Hatch; that the acts of the defendants in so doing are illegal, constituting a trespass upon the property, a slander of plaintiff's title to said land and casts a cloud upon its title and that, unless restrained by injunction, the defendants will lease the mineral rights to the bottom and bed of said lake to the injury of plaintiff. Accordingly, plaintiff prayed for the issuance of a temporary restraining order, together with a rule nisi for a preliminary injunction, and also prayed that, after a trial on the merits of the case, a permanent injunction issue enjoining the defendants from leasing or attempting to lease the oil, gas or other mineral rights in and to the property constituting the bed and bottom of the lake.

Upon the showing made by plaintiff in its petition, a temporary restraining order was issued by the district judge and the defendants were ordered to show cause why a preliminary injunction should not be granted in conformity with the prayer of plaintiff's petition. Thereafter, the State Mineral Board and the individual members thereof, represented by the Attorney General of the State, appeared and, for answer to the rule to show cause, denied

in substance that the title held by plaintiff under the original patents issued by the State extended to Lake Hatch, and further contended that, even if they had, the said patents did not and could not include the bottom of the lake because the lake was, at the time of the issuance of the patents to plaintiff's ancestors in title, and prior and subsequent thereto, a navigable body of water and, as such, title to the bed and bottom of the lake remained vested in the State of Louisiana. Defendants admitted, in their answer, that the State Mineral Board had advertised for bids for a lease of the oil, gas and other minerals on the property in controversy and insisted that said Board had the right to do so because, inasmuch as Lake Hatch was a navigable body of water, the bed and bottom thereof belonged to the State and could not be conveyed to plaintiff's ancestors in ·title by virtue of the patents under which plaintiff claimed. In addition to their answer, defendants filed an exception of no right or cause of action to plaintiff's petition.

Thereafter, plaintiff filed a plea of preemption, in which it assailed the right of defendants to contest the validity of the patents covering the property involved in the suit, claiming that any right or rights asserted by the defendants on behalf of the State of Louisiana respecting the validity of the patents were barred by Act No. 62 of 1912, which provides that suits to annul patents previously issued by the State shall be brought within six years after the passage of the act.

On the foregoing issues, the case proceeded to trial, at which considerable evi-

dence was offered by the litigants in support of their respective contentions. It was stipulated between counsel that the evidence taken at the hearing would be considered as a trial on the merits of the case and that, in case the judge decided in favor of plaintiff, a permanent injunction would issue. After the hearing, the judge, being of the opinion that the plaintiff's claim was well founded, overruled defendant's exception of no right or cause of action and issued a permanent injunction restraining the defendants from leasing to any person whomsoever the oil, gas or other mineral rights in and to the property constituting the bed and bottom of Lake Hatch. The defendants have appealed from the adverse decision.

In this court, the defendants maintain that the trial judge erred in the following respects: (1) In failing to sustain their exception of no right or cause of action, (2) in holding that the evidence was sufficient to show that Lake Hatch is situated within sections 11, 12, 13 and 14 of Township 18 South, Range 16 East of Terrebonne Parish, and that plaintiff had been in possession of the bottom of said lake for more than a year prior to the filing of the suit, and (3) in holding that Lake Hatch was not a navigable body of water and in failing to admit certain evidence touching on the question of navigability of the lake which was tendered by them.

We first direct our attention to the defendant's exception of no right or cause of action. This exception is predicated upon the provisions of Act No. 29 of the Extra Session of 1915 which, the defendants claim, expressly prohibits the issuance of an injunction in a case of this kind. The pertinent portion of the statute relied upon by the defendants reads as follows: "That the writ of injunction shall not lie in any suit brought against the lessees of the State, or the officers or employees of the State to restrain the exploitation for oil, gas or other mineral, of lands, river bottoms, or lake bottoms, *the ownership of which is in the State;* but in all such cases the remedy of the plaintiff in such suit shall be confined to a demand that the product of such exploitation, or the proceeds of the sale thereof, shall be judicially sequestrated, until the rights of all persons asserting any lawful claim to such product or proceeds shall be determined." (Italics ours.) Section 1.

Defendants declare that the allegations of fact contained in plaintiff's petition places the case squarely within the above-quoted provisions and that injunctive relief cannot be granted since this is a suit brought against officers and employees of the State seeking to restrain the exploitation of oil, gas and other minerals of a lake bottom, the ownership of which is claimed to be in the State.

We find no merit in the contention. A mere reading of the statute discloses that its application is limited to cases where the ownership of the land, lake or river bottom is in the State and claim is made to the product of the explorations and not, as defense counsel say, to matters in which the State is asserting that it is the owner of the land or lake. However, counsel proclaim that this court has definitely decided,

in Wemple v. Eastham, 144 La. 957, 81 So. 438, that the provisions of the statute are broad enough to cover a case where the state is claiming as owner, as well as in cases where its ownership is not in dispute.

In Wemple v. Eastham, the plaintiff, alleging himself to be the owner of certain property including the bed of a bayou, sought to enjoin the defendants from exploring for oil and gas under a lease which had been granted to them by the State. The defendants answered alleging the validity of the title of the State; that, by virtue of the lease, they had undertaken to go upon the premises for the purpose of boring for oil and gas, but had been prevented from doing so by acts of force and violence on the part of the plaintiff and that plaintiff was seeking to accomplish, by this means, that which he was not permitted to do through the processes of the court by Act No. 29 of the Extra Session of 1915,—that is, to prevent them from exercising their rights under the lease pendente lite. They accordingly prayed for a writ of preliminary injunction to restrain the acts of force and violence on the part of the plaintiffs. After a hearing on the rule nisi, the judge of the district court refused to grant the defendants a preliminary injunction and they made application to this court for writs of certiorari and mandamus which were granted. In this court, it was held that Act No. 29 of the Extra Session of 1915 was enacted by the Legislature to prevent such a situation like the one presented in the case and the judge of the trial court was ordered to issue a preliminary writ of injunction restraining the plaintiff, during the pendency of the suit, from interfering with or preventing the defendants from boring or exploring for the oil, gas and other minerals described in their lease from the State.

While we entertain much doubt as to the correctness of the decision in Wemple v. Eastham, since the provisions of the statute extend only to cases in which the river or lake bottoms are owned by the State and not to matters in which the State claims to be the owner, we find it unnecessary to discuss the reasoning upon which the ruling was based—for, conceding, arguendo, that the result reached by the court was proper, we think that the case is clearly distinguishable from the matter at hand. It is to be observed that, in Wemple v. Eastham, the court merely authorized an injunction restraining the plaintiff from interfering with the defendants' explorations during the pendency of the suit. The court did not hold that, if plaintiff was successful in showing on the trial of the merits of the case that he was the owner of the lake bottoms in question and that the State had no title, the statute would, nevertheless, preclude the plaintiff from obtaining an injunction. In the instant matter, the district judge found, after a trial on the merits of the case, that the State did not own the bottom and bed of Lake Hatch and that the State Mineral Board was, therefore, without right to advertise for bids for the leasing of the mineral rights to said bottoms. Obviously, in these circumstances, a writ of permanent injunction was the only effective and appropriate remedy for the protection of the plaintiff's

rights as owner of the property. Hence, the exception of no right or cause of action was properly overruled.

Before we pass on to the next contention of the defendants, we pause to remark that the plaintiff has attacked, in a lower court, the constitutionality of Act No. 29 of the Extra Session of 1915, and has renewed its challenge in this court. In view of the conclusion we have reached, it is unnecessary to discuss this question.

■ On the merits of the case, counsel for the defendants maintain that the evidence is insufficient to show that Lake⁾ Hatch is situated within sections 11, 12, 13 and 14 of Township 18 South, Range 16 East of Terrebonne Parish, and also that the evidence is inadequate to exhibit that plaintiff had been in possession of the bottom of said lake for more than a year prior to the filing of the suit. In advancing this proposition, counsel seem to be under the impression that the action filed by plaintiff is solely a possessory action and that, therefore, any question concěrning the title to Lake Hatch is not before the court. Counsel are mistaken in their assumption. The plaintiff's suit is not strictly a possessory action. It is a suit in jactitation to protect possession. Plaintiff alleges, in substance, that it is the owner of a large tract of land in Terrebonne Parish under titles which are deraigned from patents issued by the State; that the State Mineral Board has slandered its title by advertising for bids to lease the bottom of Lake Hatch for mineral purposes and that the bottom of Lake Hatch is covered by the patents under which it derived its title. Manifest-

ly, these allegations show that the action is one in jactitation. See Siegel v. Helis, 186 La. 506, 172 So. 768, and authorities there cited.

■ While it is true that the action in jactitation is to protect possession and not to establish title, the case is different where the defendant, by his answer, claims title to the property. In such instances, he converts the suit into a petitory action. In the case at bar, the defendant denies that the land is covered by the patents and then sets forth that, in any event, the patents are insufficient to establish plaintiff's title to the bottom and bed of Lake Hatch for the reason that said lake is a navigable stream and the State was powerless to convey title to its bed. Hence, two issues are raised, (1) that plaintiff is not in possession, and (2) if it is found otherwise, the patents under which plaintiff claims are null for the reason that title to the bottom of the lake could not be patented by the State. The second issue is plainly one which concerns title and has the effect of converting the action into a petitory action, if and when plaintiff has established that the titles which it holds cover Lake Hatch and that it has been in possession of the bed of that body of water.

Lake Hatch is a body of water situated in Township 18 South, Range 16 East of Terrebonne Parish, about 3/4 of a mile in length and in width. The depth of the lake at the present time varies (according to the witnesses) from two to five feet. It is a fresh-water lake which is entirely surrounded by swamp or marsh lands and

does not connect with any river or other natural outlet to the sea.

The plaintiff has been in actual physical possession of all of the high lands, which are covered by the patents issued by the State, since the year 1934. This possession, of course, extends to all of the adjacent marsh lands, including the bed and bottom of Lake Hatch, which are covered by its title.

Counsel for the defendants maintain, however, that Lake Hatch is not located within sections 11, 12, 13 and 14 of Township 18 South, Range 16 East, of which plaintiff is the owner under the grants from the State of Louisiana.

 The evidence does not sustain this contention. Plaintiff's expert witness, Mr. T. Baker Smith, a well-known civil engineer who has made numerous surveys of the land in the vicinity of plaintiff's property, testified that Lake Hatch is situated in the sections of the township which are covered by plaintiff's title. This evidence (which is not contradicted) was accepted by the trial judge and we see no reason to doubt its correctness. While it is true that no surveys had ever been made of sections 11, 12, 13 and 14 of Township 18 South, Range 16 East, this fact cannot be used to defeat plaintiff's ownership of the property located in these sections by the defendants' assertion that the sections do not in fact exist and never have existed. When the lands were patented to plaintiff's authors in title, no surveys had been made for the obvious reason that they were, for the most part, swamp lands. Hence the section lines of Township 18 South, Range

16 East of Terrebonne Parish are not shown on the official maps of the State and the quadrangle maps made by the United States Geological Survey. As a consequence, no case is presented of the sale of property by the State according to an official plat of survey showing a lake bed as was the case in McDade v. Bossier Levee Board, 109 La. 625, 33 So. 628. Nor does the question in this matter present any issue concerning the bed of a salt-water lake connected with the Gulf of Mexico, title to which was made inalienable by a series of acts of the Legislature, since it clearly appears that Lake Hatch is purely a fresh-water lake and is not shown on any official plat of survey.

There was no evidence submitted by the defendants to contradict the testimony of Mr. T. Baker Smith. The only evidence offered by them is to the effect that the section lines of Township 18 South, Range 16 East, have never been surveyed and are not shown on any map. From this evidence, counsel for the defendants conclude that these sections do not exist and that, therefore, Lake Hatch cannot be adjudged to be within them, but must be somewhere else. It suffices to say that we think that the deduction is untenable in view of the testimony of Mr. T. Baker Smith.

Since we hold that the bottom or bed of Lake Hatch is covered by the patents issued by the State to plaintiff's authors in title, we pass on to a consideration of defendant's final proposition, which is—that the evidence shows that Lake Hatch is a navigable body of water and that the judge of the lower court erred in failing to ad-

mit certain evidence touching on the question of navigability of the lake which was tendered by the defendants.

 The answer to this contention is that the issue of navigability of Lake Hatch is of no importance to the decision in this case because, whether it be navigable or not, defendants' right to question the validity of the patents issued to plaintiff's ancestors in title has been foreclosed by failure to file suit within six years from the passage of Act No. 62 of 1912. See State v. Sweet Lake Land & Oil Co., 164 La. 240, 113 So. 833. Assuming, for the sake of argument only, that the lake was navigable in fact in 1812 and that, therefore, the State was the owner of its bed and bottom by virtue of its sovereignty, there was no restraint, constitutional or otherwise, placed upon the State at the time the patents were issued which prevented it from disposing of said bed or bottom by patent to private individuals.

 The lake is admittedly a fresh-water lake not connected with any arm of the sea and, consequently, does not fall within the prohibitions contained in Acts No. 106 of 1886, No. 153 of 1902 and No. 52 of 1904.

 It was not until the enactment of the Constitution of 1921 that the people themselves forbid, in section 2 of Article IV, the Legislature from alienating or authorizing the alienation of the fee of the bed of any navigable stream, lake or other body of water, except for purposes of reclamation. This section of Article IV of the Constitution also provides that in all sales of state property the mineral rights

shall be reserved. In interpreting that constitutional limitation, this court has decided that it operates prospectively only and does not apply to conveyances of mineral rights prior to the enactment of the Constitution of 1921. See Barnett v. State Mineral Board, 193 La. 1055, 192 So. 701, and Standard Oil Co. v. Allison, 196 La. 838, 200 So. 273. The same observations are pertinent to a patent issued by the State prior to 1921 under which the bed of a navigable fresh-water lake has been conveyed.

Moreover, if there be any doubt respecting the validity of the patents in so far as they transfer title to the bed of Lake Hatch, the decision of this court in State v. Sweet Lake Land & Oil Co., supra, fully disposes of any right the State or these defendants may have had to question legality of the title. There, it was held that any patents issued by the State to beds of lakes or other bodies of water which might have been subject to annulment were fully ratified and confirmed by the failure of the State to bring a suit to vacate or annul the patents within six years from the date upon which Act No. 62 of 1912 went into effect. The court, speaking through Chief Justice O'Niell, observed [164 La. 240, 113 So. 838]: "Conceding, for sake of argument, that the bed of Sweet Lake was not subject to sale under the provisions of section 11 of Act 75 of 1880, as sea marsh, subject to tidal overflow, at 12½ cents per acre, *nevertheless the patents were signed by the Governor and by the register of the state land office, and were recorded in the state land office, and purported to convey an area of land described so as to em-*

*brace the bed of the lake, and that is all that the act of the Legislature required in its declaration that such patents should be deemed valid and unassailable after 6 years."* (Italics ours.)

■ Counsel for the defendants attempt to distinguish the ruling in the Sweet Lake Land & Oil Co. case from the case at bar on the ground that Act No. 62 of 1912 speaks of proceedings brought by the State to vacate and annul patents issued by it, whereas, in the instant case the Mineral Board, a state agency and not the State itself, is making the complaint.

We are unable to discern any force in this argument. In the first place, Act No. 62 of 1912, while providing that all suits of the State shall be brought within six years from the issuance of the patent, also declares "that suits to annul patents previously issued shall be brought within six years" without reference to the party making the attack. Furthermore, the argument is answered by the decisions in Atchafalaya Land Co. v. F. B. Williams Cypress Co., 146 La. 1047, 84 So. 351; Id., 258 U.S. 190, 42 S.Ct. 284, 66 L.Ed. 559; and Atchafalaya Land Co. v. Dibert, Stark & Brown Cypress Co., 157 La. 689, 102 So. 871. The Mineral Board and its members are asserting their claim as agents of the State and are attempting to preserve rights which they say are vested in the State. Surely if the State itself is barred by the act of 1912, the defendants, as its representatives, are likewise foreclosed.

For the reasons assigned the judgment appealed from is affirmed.

ROGERS, J., absent.