167 So.2d 509 (1964)
ST. MARY PARISH LAND COMPANY, Plaintiff-Appellant,
v.
STATE MINERAL BOARD of the State of Louisiana and Sun Oil Company, Defendants-Appellees.
No. 6157.
Court of Appeal of Louisiana, First Circuit.
July 1, 1964.
Rehearing Denied September 30, 1964.
Writ Refused December 1, 1964.
*511 Liskow & Lewis, by Austin W. Lewis, Lake Charles, for appellant.
Jack P. F. Gremillion, Atty. Gen., John S. Madden, Edward M. Carmouche, Asst. Attys. Gen., and John A. Bivens, Sp. Counsel, by John A. Bivens, Baton Rouge and Lake Charles, for appellees.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
ELLIS, Judge.
The plaintiff, St. Mary Parish Land Company, instituted this possessory action against the State Mineral Board, hereinafter referred to as the Board, and Sun Oil Company, praying to be recognized and maintained in possession of water bottoms in sections 10, 11, 12, 14 and 15 and all of section 13 lying north and west of Big Wax Bayou, all situated in township 17 south, range 10 east, St. Mary Parish, Louisiana. Plaintiff also prays that the defendant be required to institute a petitory action within sixty (60) days after the judgment maintaining plaintiff's possession shall become executory, or be forever precluded from asserting title to the bottoms.
It is undisputed that plaintiff is the owner of and in possession of the land areas of these sections and that the area is marshland, interspersed with waterways and lakes. Of particular concern here is the bed of Wax Lake.
Sun Oil Company is a nominal party to this proceeding, holding mineral leases to the water bottoms in question from both St. Mary Parish Land Company and the State of Louisiana through the Board. Royalties accruing which are allocated to the water bottoms in dispute are being held in suspense by Sun Oil Company.
The Board filed a dilatory exception of vagueness and peremptory exceptions of no right or cause of action alleging that the Board and the State of Louisiana must consent to the bringing of a possessory action against it; that the State of Louisiana is an indispensable party and was not made a party; and that the alleged acts of disturbance are not disturbances in law or fact. After these exceptions were overruled, the Board filed an answer consisting of a general denial and praying only that the plaintiff's petition be dismissed. The question of title, therefore, is not before this court, nor was it before the trial court. Evidence of ownership introduced by the plaintiff was limited to the two deeds showing acquisition of the sections of land under consideration and was admissible under Article 3661 of the LSA-Code of Civil Procedure to prove the nature, extent and duration of the alleged possession.
On appeal the defendant re-urges its exception that the State of Louisiana is an indispensable party, relying principally on an attempt to distinguish the case of Walmsley v. Pan American Petroleum, et *512 al., 244 La. 513, 153 So.2d 375 from the situation at bar. In the Walmsley case the plaintiff sought to cancel a mineral lease executed by the Board, alleging that it constituted a cloud on his perfect record title. The only issue was the validity, vel non, of the lease and neither title or possession were adjudicated. Accordingly, the Supreme Court ruled that the State of Louisiana was not an indispensable party, following the case of Daible v. Pan American Production Company, 236 La. 578, 108 So.2d 516.
We find no inconsistency between Walmsley and plaintiff's assertion here of a right to maintain a possessory action against the Board. Realty Operators v. State Mineral Board, 202 La. 398, 12 So.2d 198, and O'Brien v. State Mineral Board, 209 La. 266, 24 So.2d 470 are two examples of a possessory action being maintained against the Board without the consent of the State of Louisiana and without joining the State as a party. In both of these actions the Board converted the proceedings into a petitory action.
It was specifically held in Begnaud v. Grubb & Hawkins, 209 La. 826, 25 So.2d 606, and in Cobb v. Louisiana Board of Institutions, 229 La. 1, 85 So.2d 10 that the Board could be sued without the consent of the State of Louisiana in a possessory action.
We believe the peremptory exception of no cause or right of action was properly overruled by the lower court and we quote a portion of the reasons for judgment below as follows:
"Clearly, plaintiff's action does not involve the title to the property. The only way it can be involved is if the State should choose to assert its title and convert the proceedings into a petitory action. That question however, is left to the Mineral Board and the State. If the State claims title to the property it should be compelled to assert it and these proceedings are the proper vehicle therefor. And if it does not claim title, then it should not grant mineral leases on it. After all, what is a property owner to do when the State records mineral leases on property he possesses as owner?
"The Mineral Board did not suggest any other remedy than the one employed by the plaintiff here. If this action is not available to a plaintiff in such cases, it is uncertain that property owners have any remedy and the State may record mineral leases on any property within its boundaries at its will, while the owners have to remain helpless.
"In the case of Begnaud vs. Grubb & Hawkins et al., 209 La. 826, 25 So.2d 606, the State and its Mineral Board put the title of the State at issue in defense of similar proceedings. There are other cases in which the same defense was made. See: Realty Operators, Inc. vs. State Mineral Board et al., 202 La. 398, 12 So.2d 198.
"In the case of Louisiana Navigation Co. Ltd., vs. Oyster Commission[e] of Louisiana et al., [125 La. 740, 51 So. 706] cited above our Supreme Court made an appropriate observation. It said:
"`Considering the ground first stated, it would hardly do to say that because an alleged trespasser is without capacity to stand in judgment with respect to the title to the property trespassed on, the party claiming to be in possession as owner, has no standing to protect such possession.'
"Therefore, the contention that this action indirectly involves the title to lands of the State which cannot be sued without its consent is obviously untenable. Possessory actions can be maintained against agencies of the State. There are other defenses than setting up titles to possessory actions.
"The third peremptory exception of the Mineral Board is that the recordation *513 of, and the proposal to issue, mineral leases, do not constitute a disturbance of title either in fact or in law.
"Of course, our Courts have repeatedly held that the recordation of a mineral lease constitutes a disturbance of possession, and it is a continuing disturbance.
"Here, the Mineral Board specifically contends that because it has leased only the water bottoms that may lie in the six sections of land that the plaintiff claims to possess, no actual disturbance has occurred because there may not be any such water bottoms in these sections and if there are, they belong to the State and are not susceptible of private ownership for possession.
"Plaintiff alleged that it has a recorded deed of the property in question and that it is possessing it under the deed. We have a well recognized principle in this State that one who possesses any part of property acquired in a recorded deed, is presumed to possess the whole of the property described therein. It naturally follows, according to this principle, that the plaintiff is presumed to be in possession of all of the property described in its deed, including water bottoms, if any. It is therefore entitled to seek to be quieted in its possession thereof.
"Therefore, when it alleges, as it does here, that the Mineral Board has granted mineral leases on the same property that is described in its deed, it alleges a disturbance of its possession and states a cause of action."
On the merits, the lower court gave judgment adverse to the plaintiff, which in the main is supported and based upon the following portion of its written reasons and we quote:
"There was some evidence to show that boats navigate in some of the streams on the property concerned. But it is not sufficient to support the conclusion that the streams are navigable, and, if so, which. It is sufficient to show, however, that some of the bodies of water involved may be navigable. This being so, the principle advocated by the plaintiff cannot be employed to apply to all bodies of water within the sections involved; certainly not to those that are navigable. These are the only ones claimed by the State."
* * * * * *
"Another principal difference is that here the Mineral Board has leased and proposes to lease only the water bottoms which belong to the State. By virtue of its sovereignty, the State is the owner of the bottoms of all bodies of water that were navigable when it was admitted to the Union in 1812 as well as the bottoms of those that are presently navigable. Notoriously, these bottoms belong to the State. It is presumed to be in possession of them. Therefore, when a corporation or an individual professes to be in possession of them, as owner, specific acts should be required to show this intention.
"This was not the situation in the cited case. It was not evident that the State owned the bottom of Lake Hatch. No clear evidence of possession as owner was therefore necessary.
"The holding in that case does not assist the plaintiff in its present contention."
Ownership, however, was not before the lower court, nor is it before this court. It cannot be determined in this litigation who in fact is the owner of the water bottoms in question for the plaintiff does not have the permission of the State of Louisiana to institute a petitory action against it and the Board has not converted the possessory action instituted against it into a petitory action. Nor is there evidence of plaintiff's title in the record other *514 than to show character of its possession. No evidence to prove ownership by the State was admissible and none is in the record, to establish whether the waterways were navigable in 1812 so as to vest title in the sovereign in that year. Merely because small craft could navigate some of the bodies of water included in the sections involved herein does not prove navigability and such evidence was admissible on the question only of possession. Furthermore, the mere fact that they were navigable in 1812 when the State was admitted to the Union would not be sufficient, standing alone, to unalterably place title in the State, and therefore support a presumption of possession in the State. The State may lose title by issuance of a divesting patent and failure to act within six years in accordance with the provisions of Act 62 of 1912. However, we are not involved in a petitory action and the above state of facts necessary to support a presumption of possession in the state was not admissible nor offered for such a purpose. One may actually possess property belonging to the State but cannot divest the State of title regardless of the kind or duration of such possession. Possession is ineffective as a mode of acquisition of property belonging to the State.
It may be that the plaintiff is not only in possession of the water bottoms, but the owner thereof. This is certainly claimed by plaintiff in brief. The case of State v. Sweet Lake Land and Oil Company, 164 La. 240, 113 So. 833 involved a petitory action brought by the State of Louisiana to recover certain water bottoms transferred to private owners by patent from the State. The court held that in the absence of a constitutional prohibition against alienation of water bottoms, which constitutional provision appeared in 1921, the State's action was prescribed in six years by Act 62 of 1912. (LSA-R.S. 9:5661) To the same effect are Humble Oil & Refining Company v. State Mineral Board, 223 La. 47, 64 So.2d 839; Realty Operators v. State Mineral Board, supra; O'Brien v. State Mineral Board, supra; California Company v. Price, 225 La. 706, 74 So.2d 1; and State v. Cenac, La.App., 132 So.2d 897 (Cert. ref. 241 La. 1055, 132 So.2d 928).
The plaintiff in the instant case claims to have a similar patent and a right to assert ownership to the bottoms as against the State of Louisiana, provided the necessary permission can be secured. The decision of the lower court, therefore, tends to adjudicate that which was not at issue and to divest the plaintiff of any possible future opportunity to litigate the ownership of the water bottoms with the State.
The plaintiff, if it is to succeed, must bear the burden of proving sufficient acts of possession of the water bottoms to justify a favorable decision.
Plaintiff has conclusively shown, and it is not disputed, that it is in possession of the land areas of the sections of land in question. The acts of possession of the land areas consist of regularly patrolling the areas by an employee of the plaintiff; trapping leases granted for many years by the plaintiff and an electric transmission right-of-way granted by the plaintiff. The lands are also posted and four wells have been drilled on these six sections described in plaintiff's title offered to show character of its possession as owner. Having shown all of this, the plaintiff invokes articles 3437 and 3498 of the LSA-Civil Code to establish its possession over the water bottoms themselves.
Article 3437 permits a possessor to occupy the whole of a tract without passing over every part of it. It is only necessary that he occupy a part with the intention of possessing all. Article 3498 creates a rebuttable presumption that a possessor holding a title intends to possess to the limits of his title.
In refusing to apply these articles in the instant situation, the lower court relied on the opinion in the case of McCluskey et al. v. Meraux & Nunez, Inc., La.App., 186 So. 117. That case was converted into a petitory *515 action and involved land on both sides of Bayou Bienvenu. In determining whether the principle of LSA-Civil Code, Articles 3437 and 3498 was applicable, the court reasoned that if the stream were navigable in 1812 its bed would belong to the State of Louisiana, a third party, and the principle would be inapplicable, there being no continuity of possession.
The situation in the instant case is wholly different, however, for it is the possession of the water bottom which is in question, and not the title to the adjacent lands. McCluskey stands for the proposition that constructive possession under articles 3437 and 3498 cannot be extended to presume private possession of the bed of a navigable stream which belongs to the state. However, in that case the ownership of the stream bed was not questioned or disputed. In the instant case the plaintiff claims to possess the water bottoms as owner and with a recorded title. Possession is the only issue and there is no contention by the State that it has possessed the water bottoms, but that the plaintiff cannot possess it because it may be or is navigable and the State may be and is the owner. If the State wishes to defend on this ground it must convert this possessory, into a petitory, action. Once the State has converted this suit into a petitory action then the McCluskey case is particularly applicable as well as the following statement therein:
"* * * If Bayou Bienvenu is navigable the principle that possession of a part is possession of the whole is inapplicable, because the continuity of possession is interrupted by the bed of a navigable stream which belongs to the State of Louisiana. The title to the beds of navigable bodies of water is vested in the sovereign. Miami Corporation v. State, 186 La. 784, 173 So. 315, certiorari denied, 302 U.S. 700, 58 S.Ct. 19, 82 L.Ed. 541. The title of the State is original and not derivative. If Bayou Bienvenu was navigable in 1812 when Louisiana was admitted to the Union, all of its bed below the high water mark became the property of the State by virtue of its inherent sovereignty. State v. Jefferson Island Salt Mining Company, 183 La. 304, 163 So. 145, certiorari denied, 297 U.S. 716, 56 S.Ct. 591, 80 L.Ed. 1001. A stream is navigable in law when it is navigable in fact. State v. Jefferson Island Salt Mining Company, supra, and Burns v. Crescent Gun & Rod Club, 116 La. 1038, 41 So. 249. The burden of proof of navigability, vel non, is upon the party to whose advantage it would be to establish the fact. * * *"
In the case of Realty Operators v. State Mineral Board, supra, the title to the bed of Lake Hatch was in dispute. The court, with the following language, found at page 202 of 12 So.2d applied the principle that possession of part is possession of the whole to water bottoms:
"The plaintiff has been in actual physical possession of all of the high lands, which are covered by the patents issued by the State, since the year 1934. This possession, of course, extends to all of the adjacent marsh lands, including the bed and bottom of Lake Hatch, which are covered by its title."
It is quite true that Lake Hatch was a fresh water lake not connected with the sea, whereas Wax Lake is a salt water lake surrounded by sea marsh. We fail to understand, however, why this geological and geographical difference should require a different application of the law in a possessory action. Nor has the defendant attempted to enlighten the court. It appears, therefore, that there is a distinction without a difference.
We believe plaintiff is entitled to the benefits of LSA-Civil Code, Articles 3437 and 3498 and accordingly we find the plaintiff to be in actual physical possession of all land areas in the aforementioned sections *516 and in constructive possession of all water bottoms located therein.
We find no merit in the defendant's contention that the plaintiff evidenced an intent not to possess the water bottoms in that the "no trespassing" signs were placed on the bank of the lake as a warning to lake users not to cross plaintiff's boundary.
In advancing this argument, defendant is assuming that "no trespassing" signs are placed on the boundary of one's property. This, of course, is the most common situation. However, there may well be occasions where trespassers will be tolerated on one portion of an estate but forbidden on another.
Closely related to this argument is defendant's complaint that plaintiff did not prohibit fishermen and other members of the public from using the waterways. The signs were placed along the edge of the streams over which the public had a servitude. Many lands are burdened with servitudes but the owner thereof is no less in possession, nor does the servitude serve to divest the owner of his title.
The Board also strongly contends that the plaintiff evidenced an intent not to possess the water bottoms in question by executing a spoil deposit agreement with the United States, allowing spoil to be placed on its lands in connection with dredging operations in Wax Lake Outlet. The agreement contained the following clause:
"It is expressly understood that the right, power, privilege and easement herein conveyed shall be subject to all such right and title as the State of Louisiana may have in and to the beds of water lying and being within said above described tract of land".
The spoil deposit agreement is certainly not a denial of possession or a declaration of intent not to possess the water bottoms. It is a recognition of the fact that the Sovereign is entitled to a presumption of ownership of water bottoms of navigable streams and lakes. This, however, is not the question before this court. The streams in question were not shown to be navigable and plaintiff contends that it is the possessor and owner thereof regardless. The plaintiff has successfully established possession of the bottoms in question, and this possession has continued and extended for many years, the sections having been acquired in 1915 and 1935.
The acts of disturbance complained of are the recording of mineral leases by the Board and the advertising for bids on additional mineral leases. The acts complained of constitute a disturbance in law as defined by Article 3659 of the LSA-Code of Civil Procedure and the action is timely.
Article 3662 of the LSA-Code of Civil Procedure permits a plaintiff to pray that the unsuccessful defendant in a possessory action be ordered by the court to assert his claims of ownership within a period not to exceed sixty (60) days following the date the judgment becomes executory. The problem here is complicated by the fact that the Board is the agent for the State of Louisiana and is not vested with the Sovereign's title, if any. This court cannot order the State to assert its claims under Article 3662 because the State is not a party to this suit. Whether an order directed to the Board as agent for the State to assert the Sovereign's title would be binding on the State so as to preclude the state instituting the petitory action subsequent to the 60 day period, we need not decide. Nor are we at liberty to decide that issue, the State not being a party.
The plaintiff is entitled to the order under Article 3662 and it is therefore ordered that the State Mineral Board as agent and on behalf of the State of Louisiana assert the latter's claim of ownership within a period not to exceed 60 days from the finality of the judgment herein in and to the water bottoms in sections 10, 11, 12, 14 and 15 and part of 13, Township 17 South, Range 10 East, St. Mary Parish, Louisiana.
*517 Accordingly, the judgment of the lower court dismissing plaintiff's suit is reversed and judgment is rendered recognizing and maintaining plaintiff's possession to the land in question, including the water bottoms located within these sections.
Reversed.