LEMMON, Judge.
Plaintiff has appealed from a judgment dismissing this mandamus action, in which plaintiff sought to compel the Board of Commissioners for the Lafourche Basin Levee District and the Register of the State Land Office to take certain action necessary to complete plaintiff’s chain of title to immovable property.
In 1904 the Board sold the property to plaintiff’s ancestor in title. However, the Board did not own the property, and title at the time was still vested in the United States, because the Secretary of the Interi- or in 1861 had determined the property was not swamp land and had refused to transfer the land to the State of Louisiana under the Swamp Lands Acts. It was not until 1939 that the United States transferred the land to the State, after a redetermination of the. land’s status.
Plaintiff’s petition asserted that the State, after acquiring title, has never transferred the land to the Board, although under Act No. 13 of 1892 the Board had the right to have the land conveyed to it from the State. The petition further alleged that plaintiff requested the Board to apply to the State for transfer of the land “so as to perfect the title of your petitioners, Hero Land Company”, but that the Board refused. Accordingly, plaintiff prayed that the Board be ordered to apply for the transfer and that the Register be ordered to execute the transfer.
In its answer the Board denied any duty to apply for the transfer, and the Register in her answer admitted the Board at one time had the right to have the land transferred, but asserted the Board no longer has that right because it did not apply for the transfer prior to the effective date of R.S. 41:138 (enacted in 1958), which now prohibits the transfer to the Board unless the land is needed immediately for flood control purposes.[1]
*595 The matter proceeded to trial on stipulated documents and briefs, and the trial court refused to order the requested action. Hence plaintiff has appealed.
I
On appeal plaintiff concedes that title did not vest in the Board by operation of law when the State acquired title in 1939.[2] Section 11 of Act No. 13 of 1892, the act which created the Board, purports to convey to the Board “all lands now belonging or that may hereafter belong to the State of Louisiana and embraced within the limits of the levee district . . ., whether said lands or parts of lands were originally granted by the Congress of the United States to this State, or whether said lands have been or may hereafter be forfeited to or bought in by, or for, or sold to the State at tax sales for non-payment of taxes”. However, the act further provides:
“(i)t shall be the duty of the Auditor and the Register of the State Land Office, on behalf of and in the name of the State to convey to the said Board of Levee Commissioners, by proper instruments of conveyance, the lands hereby granted or intended to be granted and conveyed to said board, whenever, from time to time, said Auditor and said Register of the said Land Office, or either of them shall be requested to do so by said Board of Levee Commissioners or by the president thereof; and thereafter said president of said board shall cause said conveyances to be properly recorded in the recorder’s office of the respective parishes wherein said lands are or may be located and when said conveyances are so recorded, title to said land, with the possession thereof, shall, from thenceforth, vest absolutely in said Board of Levee Commissioners, its successors or grantees”.
The act has been construed as contemplating a donation which shall stand and remain open to acceptance and confirmation indefinitely, so that the Board can compel the Register and the Auditor to execute the transfer at any time.[3] State ex rel Atchafalaya Basin Levee Bd. v. Capdervielle, 142 La. 111, 76 So. 327 (1917). However, the act itself does not convey title, and the lands remain under legislative control until the instrument of conveyance has been executed and recorded. State ex rel. Bd. of Comm’rs of Tensas Basin Levee Dist. v. Grace, 161 La. 1039, 109 So. 830 (1926). Thus, as conceded, no absolute title has ever vested in the Board.
Plaintiff contends, nevertheless, citing the Capdervielle case, that that Register and Auditor are required to honor a request by the Board for transfer of title. Under the circumstances of this case, however, the Register and the Auditor can no longer be compelled to convey title to the Board, even if the Board could be compelled to request such action, because the Legislature repealed the previous grant of land (which had never been accepted) by enacting R.S. 41:138.[4] The Legislature, having granted the land to a board created by it, could revoke the grant at any time, as long as there was no interference with rights of third parties resulting from their dealings *596 with the Board during its ownership of the land. State v. Standard Oil Co. of La., 164 La. 334, 113 So. 867 (1927). Since the Board in this case never owned the land, there were no rights of third parties involved at the time the Legislature revoked the grant that had never been accepted.
II
Plaintiff’s primary contention is that the legislative adoption of R.S. 41:138 in 1958 is inapplicable in this case because of Act No. 62 of 1912.[5] Plaintiff argues that the 1912 act precludes the State from questioning the validity of the transfer to plaintiff’s ancestor, since more than six years have elapsed since the transfer and the adoption of the 1912 act.
Act No. 62 of 1912 represents a legislative declaration that the State’s failure to sue for the nullity of a patent or transfer within the time prescribed in the act operates as a tacit confirmation or ratification. Humble Oil & Refining Co. v. State Mineral Bd., 223 La. 47, 64 So.2d 839 (1953). However, in Gulf Oil Corp. v. State Mineral Board, 317 So.2d 576. (La.1974) the Supreme Court limited its earlier decision and held that the act was only intended to cure formal defects in patents or transfers that were otherwise essentially valid.
Here, the transfer by the Board to plaintiff’s ancestor in title did not contain a mere formal defect, but rather the transfer was a nullity as the sale of a thing belonging to another. C.C. art. 2452. Therefore, the State and the Board had no reason to sue for the nullity of a transfer. Act No. 62 of 1912, which only cures patents or transfers which are inherently sound and simply lacking in some formal requisite, has no applicability under the facts and circumstances of this case.[6]
The judgment is affirmed.

AFFIRMED.

. R.S. 41:138 provides:
“Notwithstanding any other provisions of law to the contrary, no land within the boundaries of any levee district or levee and drainage district, or any land that may in the future be included within the boundaries of any levee district or levee and drainage district, that presently belongs to or that may hereafter belong to the state shall be conveyed to a levee district or levee and drainage *595 district or to the governing authorities of such districts unless such land is needed for immediate use for the construction of a levee or other flood control measure.

. If title had thus vested in the Board, then arguably title would simultaneously have vested in the Board’s transferees under the doctrine of after acquired title. See Lum Chow v. Board of Comm’rs. for Lafourche Basin Levee Dist., 203 La. 268, 13 So.2d 857 (1943).

. The Board’s transferee also has standing to compel the execution of the instrument of conveyance. Atchafalaya Land Co. v. Grace, 143 La. 637, 79 So. 173 (1918). In the present case the transferee’s successor did not seek to compel execution until after the 1958 adoption of R.S. 41-138.

. There is also a question whether the phrase “lands . . that may hereafter belong to the State” is applicable to lands granted by the Congress or only to lands from tax sales. Apparently to resolve any doubt as to this question in other cases, the Legislature passed Act No. 55 of 1904 and Act No. 165 of 1938, conveying “all lands not heretofore granted” to the Board, lying within the district, according to the terms and conditions of Act No. 13 of 1892, § 11.

. Act No. 62 of 1912 (now R.S. 9:5661) provides in part, as originally adopted:
“(A)U suits or proceedings of the State of Louisiana, private corporations, partnerships or persons to vacate and annul any patent issued by the State of Louisiana, duly signed by the Governor of the State and the Register of the State Land Office, and of record in the state Land Office, or any transfer of property by any sub-division of the State, shall be brought only within six years of the issuance of patent, provided, that suits to annul patents previously issued shall be brought within six years from the passage of this Act.”

. The Board, citing the Tensas Basin Levee Dist. case, also argues that the 1912 act only applies to patents and not to sales. This was an alternative holding of the cited case, but since the act specifically recites “any transfer of property by any sub-division of the State”, we prefer to rest our decision on the basis stated in the body of the opinion.