JACHARLES R. JONES, Judge.
The Appellant, the Board of Commissioners for the Orleans Levee District, appeals the judgment of the district court granting an exception of prescription in favor of the Appellees, a group of defendants claiming ownership to Stone Island located near the Bohemia Spillway. As a result, the action was dismissed. We affirm.
Facts/Procedural History
A Petitory Action was filed in 2001 in Plaquemine Parish by the Orleans Levee District claiming ownership to land that they refer to as “Stone Island”. Stone Island, located in the Bohemia Spillway, was originally owned by the State of Louisiana. In 1895, the State of Louisiana transferred property, including Stone Island, to the Lake Borgne Basin Levee District via Act 14 of 1892[1], recorded in Book 31, Folio 269 of the Conveyance Records of Plaquemines Parish. The property conveyed was to have been within the boundary of the Grand Prairie Levee District. Over a long period of time, several legislative acts and transactions involving this property were enacted affecting ownership and mineral rights.
|aThe Orleans Levee District brought a Petitory action against certain defendants asserting ownership to Stone Island and a mineral action against oil companies that were removing minerals from Stone Island. The cases were consolidated in the district court. On March 24, 2003, the district court heard oral arguments on three related motions and/or exceptions filed by various defendants.[2] The district *814 court granted the Exception of Prescription or Preemption in favor of the various Appellees based on Act 62 of 1912, and held that the other exceptions were moot. It is from this judgment that the Orleans Levee Board takes this appeal.
Issues for Review
The Orleans Levee Board argues three assignments of error: (1) The district court erred in holding that the “transfer” of Stone Island by the State Register to the Lake Borgne Basin Levee District was not an absolute nullity; (2) the district court erred in holding that the “sale” of Stone Island by the Lake Borgne Basin Levee District to the Plaquemine Land Company was not a relative nullity, and (3) the district court erred in holding that Act 62 of 1912 bars the Levee Board’s action.
We find dispositive of this appeal the question of whether the district court erred in granting the exception of prescription or preemption in favor of the defendants/appellees, thus rendering the other exceptions and motions raised by the defendants/appellees moot, resulting in the dismissal of the case. To answer this question, we must determine whether the transfer of Stone Island by the State Register to the Lake Borgne Basin Levee District was valid.
UArgument
This case deals with issues of land ownership and the enactment of several legislative Acts that caused certain property in Plaquemines Parish to be transferred throughout the years. It is the argument of the Orleans Levee Board that the Lake Borgne Basin Levee District never owned Stone Island because it was not included in the boundaries set out for the Lake Borgne Basin Levee District when Stone Island was allegedly transferred in 1911 by Act 215 of 1908. The Orleans Levee Board argues that Act 24 of 1898 and Act 14 of 1892 establish that Stone Island was outside of the boundaries of the original Grand Prairie Levee District[3], therefore making any transaction between any party of the land known as Stone Island a relative nullity.
Further, the Orleans Levee Board argues that in 1941 the legislature passed Act 311 which “confirmed, quieted, and acknowledged” that title to “all public lands in the area of the Bohemia Spillway formally belonging to the Grand Prairie Levee District existed in the Orleans Levee District” since 1925. The Orleans Levee Board further contends that the Louisiana Supreme Court has interpreted Act 311 of 1941 to be a complete transfer of property without the need for further action to vest title in the Orleans Levee District. Richardson & Bass (Louisiana Account) v. Bd. of Com’rs of the Orleans Levee District, et al., 231 La. 299, 91 So.2d 353, 373 (1956).
IfjThe Orleans Levee Board also argues that Act 62 has been the subject of interpretation, criticism and controversy, and cites case law in which courts would recommend limiting the use of the Act. How *815 ever, there is neither case law nor legislative history that outright overturns the Act. The Orleans Levee Board relies heavily on Gulf Oil Corp. v. State Mineral Board (La.1974), 317 So.2d 576, to support its argument that the transfer of Stone Island in 1895 is an absolute nullity. Yet, Gulf Oil Corp. established that Act 62 cannot cure an absolutely null transaction. In the instant case, we find that the district court was not manifestly erroneous in concluding in its Reasons for Judgment, “[w]hile it is apparent that absolutely null transactions cannot be cured by Act 62, it is not apparent that the property sale in our case is an absolute nullity.”
Standard of Review
An exception of prescription is a peremptory exception, which a defendant may raise at any time, including on appeal or after the close of evidence, but prior to its submission after trial. LSA-C.C.P. arts. 927 and 928(B). LSA-C.C.P. art. 929 provides when a peremptory exception is pled prior to trial, the exception is tried and disposed of in advance of or on the trial of the case. LSA-C.C.P. art. 931 allows the introduction of evidence at the trial of all peremptory exceptions, except the objection of no cause of action. The trial court is not bound to accept as true the allegations of plaintiffs petition in its trial of the peremptory exception. Bowers v. Orleans Parish School Bd., 95-2530 (La.App. 4 Cir. 5/29/96); 694 So.2d 967, 972. When evidence is introduced and evaluated at the trial of a peremptory, exception, an appellate court must review the entire record to determine whether the trial court manifestly erred with its factual conclu sions. Id. Davis v. Hibernia Nat. Bank, 1998-1164 (La.App. 4 Cir.1999), 732 So.2d 61, 63.
|fiThe standard of review of a trial court’s finding of facts supporting prescription is that the appellate court should not disturb the finding of the trial court unless it is clearly wrong. In re Medical Review Proceedings of Ivon, 2001-1296 (La.App. 4 Cir.3/13/02), 813 So.2d 532.
In reviewing a peremptory exception of prescription, an appellate court will review the entire record to determine whether the trial court’s finding of fact was manifestly erroneous. Morrison v. C.A. Guidry Produce, 03-307 (La.App. 3 Cir.10/1/03), 856 So.2d 1222. Further, “the standard controlling review of a peremptory exception of prescription requires that this court strictly construe the statutes ‘against prescription and in favor of the claim that is said to be extinguished.’ ” Security Ctr. Prat. Servs., Inc. v. All-Pro Security, Inc., 94-1317, 94-1318, p. 12 (La.App. 4 Cir. 2/23/95), 650 So.2d 1206, 1214 (quoting Louisiana Health Serv. v. Tarver, 635 So.2d 1090, 1098 (La.1994)). Hall v. Reber, 2003-1482 (La.App.3 Cir.3/31/04), 870 So.2d 424.
Legal Analysis
The exception of prescription was granted by the district court citing Act 62 of 1912, which provides in pertinent part:
... All suits or proceedings of the State of Louisiana, private corporations, partnerships or persons to vacate and annul any patent issued by the State of Louisiana, duly signed by the Governor of the State and the Register of the State Land Office, and of record in the State Land Office, or any transfer of property by any sub-division of the State, shall be brought only within six years of the issuance of the patent, provided, that suits to annul patents previously issued shall be brought within six years from the passage of this Act. (emphasis added)
The Orleans Levee Board has claimed ownership of Stone Island since 1920. Ap *816 proximately 81 years had passed prior to the filing of the Petitory Action by the |70rleans Levee Board in 2001. The defendants/appellees, as does the district court, rely on Harris v. Estate of Fuller 532 So.2d 1367 (La.1988) and California Co. v. Price, 225 La. 706, 74 So.2d 1 (1954) in which the court clarified that the purpose of Act 62 was to “stabilize titles issued by the State over the signature of the Governor and Register of the State Land Office in cases wherein the State and other interested parties failed to contest the patents within a stated time.”
The Orleans Levee Board maintains that Stone Island was never actually acquired by the Lake Borgne Basin Levee District in 1911. The Orleans Levee Board also maintains that Stone Island was being held in trust for the Grand Prairie Levee District, therefore the transfer of land was the “sale of a thing belonging to another,” and thus, becomes a relative nullity under LSA-C.C. Art. 2452. However, other than this assertion by the Orleans Levee Board in brief, there is no indication in the record of Stone Island being held in trust on behalf of anyone.
The Orleans Levee Board relies heavily on Hero Lands Co. v. Board of Com’rs for Lafourche Basin Levee Dist., 366 So.2d 593, 596 (La.App. 4th Cir.App.1978), wherein the purported property owner brought a mandamus action seeking to compel the Board of Commissioners for the Levee District and the Register of State Land Office to take certain action necessary to complete plaintiffs chain of title to immovable property. The Court decided:
Act No. 62 of 1912 represents a legislative declaration that the State’s failure to sue for the nullity of a patent or transfer within the time prescribed in the act operates as a tacit confirmation or ratification. Humble Oil & Refining Co. v. State Mineral Bd., 223 La. 47, 64 So.2d 839 (1953). However, in Gulf Oil Corp. v. State Mineral Board, 317 So.2d 576 (La.1974) the Supreme Court limited its earlier decision and held that the act was only intended to cure formal defects in patents or transfers that were otherwise essentially valid.
| sHere, the transfer by the Board to plaintiffs ancestor in title did not contain a mere formal defect, but rather the transfer was a nullity as the sale of a thing belonging to another. C.C. art. 2452. Therefore, the State and the Board had no reason to sue for the nullity of a transfer. Act No. 62 of 1912, which only cures patents or transfers which, are inherently sound and simply lacking in some formal requisite, has no applicability under the facts and circumstances of this case.
The Orleans Levee Board maintains that Act 62 of 1912 does not cure such a relative nullity and that to hold otherwise would overturn the decision in Hero Lands. The district court best described the distinction between the instant case and Hero Lands by stating in its Reasons for Judgment, “... the legislature could not have transferred the property to the levee board because they did not own it at the time. The United States Government did. Further, a formal transfer of the property from the State to the levee board was never done. In our case (the instant case), the Legislature could certainly have transferred the property in question to the Lake Borgne Basin Levee District. Second, the State did formally transfer the property to them.”
Although the defendants/appellees argue that the “title question is irrelevant,” once again, as a reviewing Court, we must find that the chain of title of the defendant is good in order to conclude that the district *817 court did not err in applying Act 62 of 1912.
In the more recent ruling of Delacroix Corp. v. Jones-O’Brien, Inc. 597 So.2d 65, 69-70 (La.App. 4th Cir.1992) whereby a concursus proceeding was brought regarding entitlement to revenue from production of oil in a disputed area, although the issue of navigable waters was before this court, we clarified the application of Act 62 of 1912 in land ownership by stating:
|9. .the State argues that Act 62 of 1912 (the statute of repose) does not apply to the facts of this case, irrespective of navigability of the Lake. The State further submits that the trial court limits the provisions and pronouncements of the Louisiana Supreme Court in Gulf Oil v. State Mineral Board, 317 So.2d 576 (La.1974) which held patents conveying state property to private individuals are ineffective insofar as they purport to alienate the beds of navigable water bottoms and that Act 62 of 1912 did not have the effect of ratifying such absolutely null transfers. Act 62 of 1912, La.R.S. 9:5661, provided to the State six years, and no more, within which to “vacate or annul” any State patent or any transfer by a subdivision of the State. Citing Humble Oil & Refining Co. v. State Mineral Board, 223 La. 47, 64 So.2d 839 (La.1953), “The Duck Lake Case”, and Realty Operators v. State Mineral Board, 202 La. 398, 12 So.2d 198 (La.1942), the trial court distinguished Gulf Oil from the instant case because here we are involved with an inland waterbody as opposed to a “sea bottom”. The State argues that the trial court misinterpreted the Gulf Oil decision.
The State insists that under Gulf Oil, it is not that a waterbody is considered a “common thing” that merits the public trust doctrine, but that it is a “public thing” owned by the State for the benefit of all citizens as expressed in our Civil Codes dating back to 1808. See: Yianopoulus, Civil Law Property, Section 41 (2d Ed.1980). The State claims that this prohibition against the alienation of a public thing as being in the public trust has been expressed in State v. Bayou Johnson Oyster Co., 130 La. 604, 58 So. 405 (1912). Furthermore, the State urges that La. Civil Code Art. 450 provides that the bottoms of natural, navigable waterbodies are considered public things.
In closing, the State argues that Act 62 of 1912 is a prescriptive statute and should be strictly construed. All-state[AlL-State] Credit Plan of Natchitoches, Inc. v. Ratliff, 279 So.2d 660 (La.1973). The State submits that the intent of the legislature regarding patents and navigable water and beds thereof is made clear in Act 727 of 1954, La.R.S. 9:1107-9:1109. Patents purporting to transfer navigable water bottoms are absolutely null. The State urges that the cases of Duck Lake and Realty Operators are not controlling law on this issue since they preceded the Supreme Court’s decision in Gulf Oil. Delacroix responds that the Duck Lake case is an exact Imparallel factual situation to the instant case and they are distinguishable from Gulf Oil. The rationale of the Supreme Court in deciding Gulf Oil was to extend the definition of “sea shore” from the shore itself to encompass the bottom of the sea or an arm of the sea. This rationale cannot be used to embrace the bed of a marsh interior navigable lake such as Lake Quatro Caballo. Nor does the Civil Code make lakes common or public things.
Furthermore, Delacroix argues that the United States Supreme Court’s decision in Phillips Petroleum Company & Cinque Bambini Partnership v. Missis *818 sippi & Saga Petroleum U.S., Inc., 484 U.S. 469, 108 S.Ct. 791, 98 L.Ed.2d 877 (1988) sets the stage for disruption of land titles across all Louisiana wetlands if the courts do not uphold the Realty Operators and Duck Lake decisions. That decision held that the State of Mississippi ownership of sovereignty water bottoms acquired on admission to the Union extended to the limits of effect of the tide, through marsh and into the barest depths of waters. As the trial court stated in its reasons for judgment, ... Phillips Petroleum Co. is the ultimate justification for the wisdom of the 1912 Legislature in their adoption of Act 62 of that session. But for the legislation every private domain owner of an opening in the marsh, large owners and small, would need to stand ready to litigate on the level of the instant case, and produce like expert testimony on a complicated historical subject, or forfeit their ownership to State claims which had been allowed to lie dormant for nearly a century. We agree with the trial court’s application of Act 62 in the instant case. This case is distinguishable from Gulf Oil. We also find that Phillips Petroleum Co. is not controlling. Any other conclusion would be contrary to the objectives of Act 62.
In light of Delacroix, and despite the expert testimony offered at trial, we find that the conveyance of Stone Island to the Lake Borgne Levee District was a valid transfer. The intent of the legislature to convey this land in the late 1800’s was clearly present. At the time of the transfer of Stone Island the Grand Prairie Levee District and the Lake Borgne Basin Levee District were confused. The district court found that the expert testimony of today has not proven to clarify any | nuncertainties as to the boundaries in question. Had the expert testimony of today been presented over 100 years ago, the judicial process would have been in a better posture to resolve this dispute. We agree with the district court that the ability to survey land in the 1890’s was “woefully inferior” to the capabilities of today. We also agree that the maps on the territory contained in the record place Stone Island outside of the boundaries of the Grand Prairie Levee District. However, the standard of our review is manifest error. We cannot say that, after our review of the record, the district court was manifestly in error, or clearly wrong in concluding that Stone Island was to be conveyed to the Lake Borgne Levee District via the intent of the legislature.
Michael Floris, a civil engineer and registered land surveyor, testified as an expert witness on behalf of the Orleans Levee Board. He testified that although his maps came from either “U.S.G.S.” [sic], the State of Louisiana or the State Engineering Office, he “overlaid on top of them” to “highlight the areas that I think best represent the wording of the acts”. He further testified that he did not personally go to the Orleans Levee Board to inquire what surveys were done although he “assumed” that a survey was performed. He testified that he found no relevance in locating that engineering data (the surveys) as it related to the various acts. It is from this testimony that as the district court determined that it is nearly impossible to clearly draw a line indicating the exact location of Stone Island as it relates to the Lake Borgne Basin Levee District, because the descriptions and the ability to sever the territory in the early 1900’s was lacking in means. We cannot say that this factual determination is clearly wrong.
When reviewing a district court’s finding of intent, we are bound by the manifest error rule. At the heart of *819 this case is the intent of the legislature in its 1 ^transfer of land to the Lake Borgne Levee District. The starting point for the interpretation of any statute is the language of the statute itself; when the statute is clear and unambiguous and its application does not lead to absurd consequences, the statute is applied as written, and no further interpretation may be made in search of legislative intent. LSA-R.S. 1:4; LSA-C.C. art. 9. Richard v. Hall, 874 So.2d 131 (La.2004). A statute must be applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intention the legislature had in enacting it, since the rules of statutory construction require that the general intent and fair purpose of the legislature in enacting the law must, if possible, be given effect. Id. In the instant case, we cannot say that the district court erred in finding that it was the intent of the legislature to transfer Stone Island to the Lake Borgne Levee District.
In accordance with Davis v. Hibernia Nat. Bank 732 So.2d 61, 63, 1998-1164,2 (La.App. 4 Cir.1999), as previously stated, this Court has reviewed the entire record and conclude that the district court was not manifestly erroneous with its factual conclusion that the petitioner’s cause, of action in this case has prescribed. Act 62 of 1912 is applicable, and that the Orleans Levee Board had six years to bring an action to vacate or annul the State’s patent on Stone Island. We cannot say that the district court erred in finding that the expert testimony failed to establish a relative nullity as to the transfer of land by the legislature, which included Stone Island. Therefore, the conclusion that this action has prescribed has merit.
|13Pecree
For the reasons stated herein, the judgment of the district court dismissing that the Petitory Action filed by the Orleans Parish Levee Board under the theory of prescription was not manifestly erroneous, and is hereby affirmed.
AFFIRMED.

. "... .all territory contained within the Parish of St. Bernard and all that portion of the parish of Plaquemines on the left bank of the Mississippi River beginning at the upper line of said parish and extending to the lower portion of Bohemia plantation, in said parish of Plaquemines, shall be embraced in the limits of a levee district to be known and styled 'The Lake Borgne Levee District’ ”,

. Defendants, estate of William G. Helis, A Partnership, Helis Oil and Gas Corporation, the William G. Helis Company, L.L.C., and Chevron U.S.A., Inc. filed a Motion for Summary Judgment, which was joined by numerous other defendants. An Exception of Preemption was filed by defendants Loy Raoul, Olivier Trust, Pierre Francois Olivier, Elisabeth B. Olivier, and Andrew S. Zenegal and *814 joined by Mark Peneguy. Finally, ExxonMo-bil Corporation filed Exceptions of Prescription and Res Judicata. Because the arguments asserted similar claims, they were heard simultaneously by the district court.

. On June 28, 1930, the Lake Borgne Basin Levee District and the Grand Prairie Levee District recognized there was confusion as to the boundaries of the two Levee districts and signed an act of compromise. Although the compromise has no bearing on issues before the district court, the district court sought to recognize the compromise only to show the confusion of land ownership stemming from a long history of disputes. The Orleans Levee Board, on the other hand, argues that the experts of today are not confused as to the boundaries and that the Orleans Levee District was not a party to the Compromise.