694 So.2d 967 (1996)
Vertis BOWERS, natural parent of Krishell Bowers
v.
ORLEANS PARISH SCHOOL BOARD, et al.
No. 95-CA-2530.
Court of Appeal of Louisiana, Fourth Circuit.
May 29, 1996.
*968 Frank B. Hayne, New Orleans, for Plaintiff-Appellant.
Donesia D. Turner, Bryan & Jupiter, New Orleans, for Defendant-Appellee.
Before BYRNES, ARMSTRONG and WALTZER, JJ.
WALTZER, Judge.

I. STATEMENT OF THE CASE
Plaintiffs appeal a September 26, 1995 judgment from the district court, dismissing their petition and granting defendant's exception of prescription. No reasons for judgment were provided.

II. STATEMENT OF FACTS
On November 6, 1991 at Rosenwald Elementary School, several students, including Krishell Bowers, reported to Principal Gertrude Ivory that substitute teacher Alvin Pierre touched them inappropriately, namely, fondled their breasts. Mrs. Ivory contacted the New Orleans Police Department and on that same day, as he was entering his classroom, Alvin Pierre was arrested for sexual misconduct. According to Mrs. Ivory's affidavit, Alvin Pierre[1] has not worked as a substitute teacher or been present at Rosenwald School since that day.
Detective Edward O. Gai, Jr. states in his affidavit that on November 6, 1991 he was called to Rosenwald School to investigate the allegations of sexual misconduct against Alvin Pierre. He further states that on November 6, 1991, he took a statement from Krishell Bowers and gave Krishell his name, business address, business telephone number and the item number of the complaint to give to her parents or guardians. Lastly, Detective Gai states "(t)hat on November 6, 1991, (sic) or November 7, 1991, he personally spoke with Ms. Vertis Bowers via telephone to discuss her daughter's, Krishell Bowers (sic), statement to him regarding the alleged misconduct."
On January 6, 1993 plaintiff filed the instant petition and on October 19, 1994 defendants filed an exception of prescription. On May 11, 1995 plaintiff filed an amended petition alleging the following additional and/or amended paragraphs:
2.
The molester, Alvin Pierre, warned those whom he molested against telling anyone on penalty of harm and retribution against them, which, combined with the traumatic results of the molestation, prevented Krishell from talking about it with her mother.
3.
The first relevant knowledge of petitioner was that some sexual violation(s) had occurred; however, when it or they occurred, the extent of what had taken place, and the forms of the abuse did not become known in any substantial way to petitioner until the summer of 1992; and the details of what took place were not at that time nor have they ever been conveyed to petitioner by her daughter.
4.
As a direct result of the psychological and emotional damage suffered by Krishell Bowers from being molested by Alvin Pierre, she could not and did not convey to her mother the facts of what had taken place, making her mother ignorant of the existence and nature of the cause of action which existed.
In response thereto, the defendant filed an amended exception of prescription which was *969 set for hearing on September 22, 1995. Pertinent parts of the transcript are as follows:
(Testimony of Vertis Bowers)
Q. What to your knowledge unusual occurred in that year (1991) in connection with her attendance at that (Rosenwald) school?
A. I received a phone call from a detective stating that he was called in by Miss Ivy.
Q. When was this phone call received; was that in November 1991?
A. Yes, it was.
Q. What were you told?
A. When he called me, he told me that he just wanted to inform me that he was called by the school and that Miss Ivy had called him in and he would get back with me to let me know any other information, but that's it. I haven't heard from him since that time.
Q. When did you next receive any information concerning difficulties that your daughter had in school?
A. It was at least a year later. I tried to get my daughter to open up, but she wouldn't.
Q. You asked her about it?
A. I asked her as to the allegations of what happened at school and she still up to this date, she won't open up.
Q. Did you consult Miss Eunice Charles as your attorney?
A. Yes, I did.
Q. When did you consult her?
A. It was about a year after I had tried to get my daughter to open up to me and I was talking to her about it, Miss Charles.
Q. Did your daughter later on tell you more about what happened?
A. She told me. That's when I talked to Miss Charles that the man was fondling her up.
Q. Was that the first time she told you?
A. Yes. And I talked to Miss Charles about it.
Q. When did you speak to Miss Charles?
A. I can't remember exactly right now, but I know it was about a year after I had tried to get my daughter to open up to me.
Q. So it was a year delay before you got any further information from your daughter?
A. Yes, sir.
* * * * * *
Q. Miss Bowers, I want to get straight the date that the detective called you. Did he call you or did you call him?
A. I called him when I got the card; the school sent the card home.
Q. Krishell gave you the card?
A. Krishell gave me a card and I said I want to know what was it about and she said to just call him.
Q. You called him the same day?
A. That evening. I had to wait until the next day before I could talk to him and then he said he will get back with me after he found out more information from the school. And I haven't talked to him any more about it.
Q. Is it true that when you talked to Detective Gai, that Krishell
A. He was telling me what Miss Ivy said.
Q. He didn't tell you what Krishell's allegations were?
A. No. He said he had to find out more information from the school.
MISS TURNER:
Thank you.
THE COURT:
You knew that something involving your daughter happened at the school in November (sic) 1991, didn't you?
THE WITNESS:
Yes. And I tried to talk to the principal.
THE COURT:
And what?
THE WITNESS:
Miss Ivy. And I asked her what happened and she said the man was arrested.
THE COURT:
She must have said the man was arrested?
THE WITNESS:

*970 No. I asked her what happened and she said the man was arrested because the girls came in and said he was touching on them. And I asked her, I said, "Well, what do you mean touching on them?" And I went to ask my daughter and she wouldn't open up to me. She still don't want to talk about it today. And when I talk about it, she cry.
THE COURT:
All that happened in 1991?
THE WITNESS:
Yes.
THE COURT:
Any questions as a result of my questions?
BY MR. HAYNE:
Q. It was about a year after November 1991 that your daughter opened up to you to some extent, is that correct?
A. Yes, sir.
MR. HAYNE:
Thank you.
BY MS. TURNER:
Q. So your testimony is that Miss Ivy told you on November 6, 1991 that Krishell and some other girls told her that this man was touching on them?
A. Yes.
Q. And that happened on November 6, 1991?
A. Yes.
Q. So you were aware on November 6, 1991 that happened?
A. But I didn't understand, I didn't know as far as to the extent my daughter was concerned.
Q. You were aware that something happened?
A. Yes, I was aware that something had happened, but I didn't know what had happened, any details.
Q. But you knew that Krishell said the man was touching on her, is that correct?
A. Yes, but that was some time later she told me.
THE COURT:
What did the detective tell you? You called him and he said what?
THE WITNESS:
The detective said that Miss Ivy told him that he was called to the school on allegations that some of the girls stated that a man, Mr. Pierre, was fondling them.
THE COURT:
Why was the card sent to you by the school, the detective card?
THE WITNESS:
I don't know. They gave it to my child to bring home.
THE COURT:
Why do you think they gave it to your child?
THE WITNESS:
To bring to me.
THE COURT:
Did they give it to every student?
THE WITNESS:
All the ones that were involved.
THE COURT:
So you knew at that point that you got this card because your child had been involved in something that concerned this detective?
THE WITNESS:
Yes.
THE COURT:
And you called the principal?
THE WITNESS:
Yes.
THE COURT:
Did the principal say the same thing, that your child had been involved in something that caused the school to contact this detective?
THE WITNESS:
Yes. And she was suppose to call me in but she never did call me in for a conference.
THE COURT:
Who?
THE WITNESS:
The principal, Miss Ivy. I never could get her. She was always at a meeting *971 or out at a principal meeting or something. I just got tired.
THE COURT:
How many times did you try to contact her?
THE WITNESS:
I left several messages for her to call me back and when I called, she was at a principal's convention or meeting.
THE COURT:
And she never called you back?
THE WITNESS:
She never called me back and I was upset about it.
THE COURT:
Never?
THE WITNESS:
She never called me back.
THE COURT:
Until today?
THE WITNESS:
No, not until today she haven't called me.
THE COURT:
Any questions, Mr. Hayne?
BY MR. HAYNE:
Q. Did you learn of the extent of the abuse of your daughter in November of 1991?
A. No.
Q. Was there a year's delay before you began to learn
THE COURT:
She already answered that question twice, counsel. How many more times do you want it in the record? Go on to something that she hasn't already testified to. You asked the question twice and she answered it twice.
MR. HAYNE:
No further questions.
BY MS TURNER:
Q. Isn't it true that Krishell Bowers stayed at the school the whole 1991-92 school year?
A. Yes.
Q. So you didn't withdraw her from the school?
A. No.
Q. And you had access to and from the school all the time?
A. Yes.
Q. And Miss Ivy was the principal the whole time Krishell was there after the incident?
A. Yes.
* * * * * *
TESTIMONY OF KRISHELL BOWERS:
BY MR. HAYNE:
Q. Krishell, you were present here during the testimony just given by your mother, is that correct?
A. Yes.
Q. Is what she said correct insofar as you remember?
A. (Witness nods head affirmatively.)
Q. In particular, was it almost a year after it happened before you talked to your mother in any detail about what took place?
A. Yes.
MR. HAYNE:
Thank you.
CROSS-EXAMINATION
BY MS. TURNER:
Q. Krishell, didn't you tell Miss Ivy on November 6, 1991 that Mr. Alvin Pierre touched your breasts?
A. Yes.
Q. Didn't you talk to Detective Gai on that same day?
A. No. We was in the room, in Miss Ivy's office, but I wouldn't talk to him.
Q. Didn't you give a statement to the detective that day?
A. No, to Miss Ivy.
Q. And the detective was in the room?
A. Yes.
Q. Did you bring home Detective Gai's phone number, his business address and name to your mother that evening?
A. Yes.

*972 III. SPECIFICATIONS OF ERROR:

On appeal, plaintiffs raise the following specifications of error:
1. The trial court failed to accept the allegations of plaintiff's original and amending petition as true and such failure constitutes error;
2. The trial court erred in failing to apply the doctrine of contra non valentem and failed to apply the rule that in child molestation cases, the running of prescription is suspended until the child victim's parents learn of the abuse, the extent of the abuse and the various forms of the abuse.

IV. ASSIGNMENT ONE:
Turning to the first specification of error, we note that despite plaintiff's argument to the contrary, the trial court is not required to accept the allegations of the petition as true for an exception of prescription. An exception of prescription is a peremptory exception [LSA-C.C.P. art. 927], which can be raised at any time, including on appeal or after the close of evidence, but prior to submission at the trial level [LSA-C.C.P. art. 928 B.]. LSA-C.C.P. art. 929 provides that when a peremptory exception has been pled prior to trial, the exception is tried and disposed of in advance of or on the trial of the case. LSA-C.C.P. art. 931 allows evidence to be introduced at the trial of all peremptory exceptions except the objection of no cause of action. It is obvious that the trial court cannot be bound to accept the allegations of the petition as true and simultaneously hear evidence on those allegations! The only peremptory exception on which evidence cannot be introduced is the exception of no cause of action, because likewise this is the only peremptory exception where the trial court is bound to accept the allegations of the petition as true[2]. This assignment of error is without merit.

V. ASSIGNMENT TWO:
Plaintiff states at paragraph one of her amended petition:
The molestation of Krishell Bowers at issue, herein which occurred at Rosenwald Elementary School in New Orleans, consisted in acts of molestation of her and other classmates on, about or before November 6, 1991 and were performed by Alvin Pierre, a teacher employed by defendant Orleans Parish School Board.
Plaintiffs other allegations in the amended petition have been quoted above and generally seek to apply the doctrine of contra non valentem and the jurisprudential rule that the running of prescription is suspended until the parents of the child victim know about the abuse, including its nature and extent. See: Wimberly v. Gatch, 93-2361, 19 (La. 4/11/94), 635 So.2d 206, 218.
We find that the trial judge did apply both the doctrine of contra non valentem and the jurisprudential rule that the running of prescription is suspended until the parents of the child victim know about the abuse, including its nature and extent. In the instant case Vertis Bowers admits that on November 6, 1991 she knew that her daughter had been sexually molested by Alvin Pierre and that the molestation included fondling of the breast. Thus Vertis Bowers knew all of the elements of the cause of action on November 6, 1991. Plaintiff's failure to find out any further details is her own fault; she should have taken further action such as bring her daughter to counseling, getting a copy of the police report or physically going to the school to see the principal. If plaintiff did not feel confident of her ability to do any of those things, she should have at the very least immediately consulted a lawyer. "A plaintiff will be deemed to know that which he could have learned from reasonable diligence." LaPlaque Corp. v. Chevron U.S.A., Inc., 93-1597, 8 (La.App. 4 Cir. 5/26/94), 638 So.2d 354, 358 [citing "Matthews v. Sun Exploration & Prod. Co., 521 So.2d 1192, 1197 (La. App.2d Cir.1988)"[3]].
*973 A corollary of the doctrine of contra non valentem is that prescription begins to run when the plaintiff has a reasonable basis to pursue a claim against a specific defendant. LaPlaque, supra, 93-1597, 4, 638 So.2d 354, 356 [citing "Jordan v. Employee Transfer Corp., 509 So.2d 420 (La.1987)"]. The doctrine of contra non valentem only suspends the running of prescription during the period of time when the action was not reasonably knowable by the plaintiff. LaPlaque, supra at 93-1597, p. 4, 638 at 356 [citing "Harlan v. Roberts, 565 So.2d 482 (La.App. 2 Cir.1990)"]. In the instant case, the cause of action was certainly reasonably knowable as of November 6, 1991, hence prescription commenced on that date and plaintiff failed to file her petition in a timely manner.
Lastly, we find that the trial court may have assessed the credibility of witness Vertis Bowers and found it to be lacking. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978) on remand 370 So.2d 1262 (La.App. 3 Cir.1979) writ denied, 374 So.2d 660 (La.1979); Rosell v. ESCO, 549 So.2d 840 (La.1989) on remand 558 So.2d 1360 (La. App. 4 Cir.1990) writ denied, 561 So.2d 105 (La.1990); Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993) cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
For the reasons discussed, the judgment of the district court granting the exception of prescription is affirmed.
AFFIRMED.
NOTES
[1] Alvin Pierre also has not worked anywhere else in the Orleans Parish School System.
[2] We note that the only other areas where the trial court is bound to accept the allegations of the petition as true are the motion for judgment on the pleadings and summary judgment when no affidavits controverting the pleadings have been introduced.
[3] Quotations marks are used on the Matthews citation because we are quoting the citation contained in the LaPlaque case.