915 So.2d 816 (2005)
Roger E. PRICE, Cynthia J. Price, Mattie Johnson Price, Steve Gentle, III, and Field Gremillion, III
v.
ROY O. MARTIN LUMBER COMPANY, Beazer East, Inc., Vulcan Materials Company, Cos-Mar Company, BFI Waste Systems of North America, Inc. and the Dow Chemical Company.
Nos. 2004 CA 0227, 2003 CW 2647, 2003 CW 2669, 2003 CW 2670, 2003 CW 2671.
Court of Appeal of Louisiana, First Circuit.
April 27, 2005.
*818 Stephen M. Irving, Baton Rouge, Counsel for Plaintiffs/Appellees Roger E. Price, et al.
J. Chandler Loupe, Baton Rouge, Counsel for Plaintiff/Appellee Roger Price.
Vincent J. Sotile, Jr., Donaldsonville, Counsel for Plaintiff/Appellee Cynthia Price.
Joseph J. McKernan, Baton Rouge, Counsel for Plaintiff/Appellee Steve Gentle, III.
Calvin C. Fayard, Jr., Denham Springs, Counsel for Plaintiff/Appellee Field Gremillion, III.
*819 Marion A. French, Alexandria, Counsel for Plaintiffs/Appellees Roger Price, et al.
Charles S. Weems, III, Raymond L. Brown, Jr., Alexandria, Richard E. Sarver, New Orleans, Counsel for Defendant/2nd Appellant Roy O. Martin Lumber Company.
Scott E. Delacroix, New Orleans, Counsel for Defendant Beazer East, Inc. (f/k/a Koppers Company).
Bradley C. Myers, Baton Rouge, Counsel for Defendants/3rd Appellants Vulcan Materials Company and Cos-Mar Company.
James C. Percy, Baton Rouge, Counsel for Defendant BFI Waste Systems of North America, Inc.
Brandon K. Black, David M. Bienvenu, Jr., Baton Rouge, Counsel for Defendant/1st Appellant The Dow Chemical Company.
Thomas M. Nosewicz, New Orleans, Counsel for Defendant BFI Waste Systems of North America, Inc.
Before: WHIPPLE, PARRO, DOWNING, MCDONALD and HUGHES, JJ.
DOWNING, J.
In this case, the trial court rendered six judgments on October 21, 2003, each directed to different defendants in a class action. Four defendants directly appeal the October 21, 2003 judgments of the trial court entered against them that denied their exceptions raising the objection of improper venue. Also, several defendants have filed various writ applications relating to rulings by the trial court on several other exceptions and motions, which writ applications were referred to the panel handling the merits of this appeal. Two of these writ applications address the other two judgments not attacked on appeal.
For the following reasons, we reverse the four judgments of October 21, 2003, on appeal denying the exceptions of improper venue. We vacate all other portions of the judgments at issue. Further, we grant the writs on applications 2003 CW 2647 and 2003 CW 2669, reverse portions of the two other judgments at issue therein, and vacate the remaining portions of those judgments. We do not consider the other two writ applications. We remand this matter to the trial court for transfer of the proceedings to a parish of proper venue.

FACTS AND PROCEDURAL HISTORY
On February 26, 2003, five named plaintiffs, all of whom are residents of Alexandria, Louisiana, in Rapides Parish, filed in Ascension Parish a "Class Action Petition for Damages" on their own behalf and "as representatives of the class of persons" who allegedly suffered damages as a result of the operations at the Dura-Wood Treating Company, a wood-treating facility in Alexandria, Louisiana ("the Dura-Wood facility"). According to the original and amending petitions, the Dura-Wood facility engaged primarily in the production of creosote-treated railroad ties, and from 1940 until the mid-1950's, the Dura-Wood facility's creosote and wastewater were discharged into a small creek running into Chatlin Lake Canal. As a result, significant quantities of creosote sludge were allegedly deposited into the canal and ponds. Additionally, according to the original and amending petitions, there were spills at the facility that were never remediated, and there was a failure to contain creosote drippings from the treating units, runoff, or overflow from the Chatlin Lake Canal, which contributed to the release of significant amounts of chemicals, substances and/or wastes. The plaintiffs further alleged that these practices resulted *820 in: release of a significant amount of hazardous and toxic creosote into the environment of the communities where they reside, including into the air, soil and water; escape of various chemicals, substances and/or wastes from the facility to the properties owned by plaintiffs; and contamination of the soil, sediments, groundwater and buildings on or within plaintiffs' property.
Additionally, plaintiffs averred that two extremely toxic chemicals, recycled hexachlorobenzene ("HCB") waste, which was contained in the creosote, and pentachlorophenol were used as preservatives to treat lumber at the facility and that these toxic chemicals were ultimately released into plaintiffs' community. Plaintiffs further averred that a creosote extender containing styrene tar and HCB was also used at the Dura-Wood facility and contaminated their community. Plaintiffs contended that these toxic chemicals used in the lumber treatment process at the Dura-Wood facility originated from various companies named as defendants in their petition.
Named as defendants in the original and amended petitions were: Roy O. Martin Lumber Company ("Roy O. Martin"), a company that allegedly purchased the Dura-Wood facility in 1970 and began using the contaminated ponds to receive process water; Beazer East, Inc. ("Beazer East"), whose predecessor, Koppers Company, Inc., allegedly owned and operated the Dura-Wood facility from 1940 until the mid-1950's; Vulcan Materials Company ("Vulcan"), a company from which pentachlorophenol and HCB wastes used in the wood treatment process at the Dura-Wood facility allegedly originated; Cos-Mar Company ("Cos-Mar"), a company from which waste styrene tar and HCB waste allegedly contained in the creosote extender used at the Dura-Wood facility allegedly originated; BFI Waste Systems of North America, Inc. ("BFI"), a company that allegedly handled the waste styrene tar and HCB waste at its pit site in Darrow, Louisiana, in Ascension Parish, and transported this waste to JOC Oil in Texas, where the waste was then incorporated into the creosote extender ultimately used at the Dura-Wood facility; and the Dow Chemical Company ("Dow"), another company from which waste styrene tar and HCB waste, allegedly contained in the creosote extender used at the Dura-Wood facility, allegedly originated.
Plaintiffs claimed that these defendants were experts in the area of manufacturing, formulation, packaging, handling and storage of hazardous and toxic materials and that, as such, they are to be held to a higher degree of care and duty. According to their petitions, defendants violated this duty of care by exposing plaintiffs to concentrations of the above-mentioned substances where it was reasonably certain that exposure would cause physical impairment. Plaintiffs also alleged that defendants were liable to them "in solido" for their actions, which constituted negligence and intentional and willful misconduct.
According to their petitions, exposure to the above chemicals and toxic substances has resulted in physical injury and diseases to plaintiffs, property damage and diminished property value. Additionally, plaintiffs sought exemplary damages pursuant to La. C.C. art. 2315.3 for the defendants' allegedly wanton and reckless disregard for public safety in the storage and handling of hazardous and/or toxic substances.
In response to the plaintiffs' allegations, defendants filed several exceptions. Roy O. Martin, Beazer East, Cos-Mar, Vulcan, Dow and BFI filed declinatory exceptions raising the objection of improper venue. Cos-Mar and BFI also filed peremptory exceptions raising the objections of no *821 cause of action, and BFI additionally filed exceptions of vagueness and nonconformity of the petition with the requirements of La. C.C.P. art. 891. Additionally, Beazer East, Cos-Mar, Vulcan and Dow filed motions to transfer on the basis of forum non conveniens.[1] A hearing on these exceptions and motions was conducted on October 8, 2003, and by six separate judgments, each signed on October 21, 2003, the trial court denied all the exceptions and motions of each of the six defendants.
Four of the six October 21, 2003 judgments are the subject of this appeal. Specifically, Dow, Roy O. Martin, Vulcan and Cos-Mar each appealed the October 21, 2003 judgment applicable to them, assigning as error the trial court's denial of their exceptions of improper venue and motions to transfer on the basis of forum non conveniens.[2]
Additionally, BFI, Beazer East, Vulcan and Cos-Mar each filed a writ application with this court seeking review of these issues and other aspects of the October 21, 2003 judgments denying them the relief they had sought below. On April 21, 2004, another panel of this court referred all four writ applications to the panel considering the merits of this pending appeal.[3]

THE APPEAL
As stated above, this appeal actually relates to four separate judgments, all rendered on October 21, 2003. On appeal, Vulcan, Cos-Mar, Dow and Roy O. Martin seek reversal of the rulings denying their exceptions of improper venue in each of those four judgments, contending that the trial court erred: (1) in admitting plaintiffs' exhibits, over defendants' objections, where the exhibits were not authenticated and constituted inadmissible hearsay; (2) in according the mere allegations in plaintiffs' petition more weight than uncontradicted testimony and documentary evidence; and (3) in overruling defendants' venue exceptions based on a finding that plaintiffs' unsupported allegations "may" be sufficient to establish solidary or joint liability among defendants, where defendants' uncontradicted evidence revealed that the alleged attenuated connection between the sole defendant located in Ascension Parish and the remaining defendants does not exist and, therefore, cannot serve as the basis of joint or solidary liability among defendants. Additionally, in their fourth assignment of error, defendants contend that the trial court abused its discretion in denying defendants' alternative motions to transfer on the basis of forum non conveniens.

Admission of Plaintiffs' Exhibits into Evidence

(Assignment of Error No. 1)
We first address defendants' contention that at the hearing on the exceptions of improper venue, the trial court erred in admitting over their objection plaintiffs' "expert report," which listed and appended *822 memoranda and correspondence, and a 1973 letter purportedly from the Louisiana Department of Health, where plaintiffs failed to authenticate the documents, and the documents constituted inadmissible hearsay.
The objection of improper venue is raised by the declinatory exception. La. C.C.P. art. 925. At the trial of the declinatory exception, "evidence" may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition, the citation or return thereon. La. C.C.P. art. 930. This court has interpreted the word "evidence" in La. C.C.P. art. 930 to mean competent legal evidence. Board of Commissioners of Port of New Orleans v. Louisiana Commission on Ethics for Public Employees, 416 So.2d 231, 238 (La.App. 1 Cir.1982); see also Pyburn v. Walle Corporation, 454 So.2d 1128, 1130 (La.App. 4 Cir.1984).
Because authentication of evidence is a condition precedent to admissibility, an exhibit that is not authenticated does not constitute competent evidence. See La. C.E. art. 901. "Authentication" is a process whereby something is shown to be what it purports to be. Newpark Resources, Inc. v. Marsh & McLennan of Louisiana, Inc., 96-0935, p. 5 (La.App. 1 Cir. 2/14/97), 691 So.2d 208, 211. Evidence must either be authenticated as provided in La. C.E. art. 901, or it must be self-authenticating. See Lane v. Department of Public Safety and Corrections, 00-2010, pp. 8-9 (La.App. 1 Cir. 2/15/02), 808 So.2d 811, 816-17. Louisiana Code of Evidence article 901(B) includes a non-exclusive list of methods that may be utilized to authenticate evidence, including testimony of a witness with knowledge; non-expert opinion as to the genuineness of handwriting based on familiarity; and comparison with specimens that have been authenticated.
In the instant case, exhibit P-1 offered by plaintiffs in opposition to the exceptions of improper venue included a copy of a letter signed by Jim Tarr, who was not identified and did not testify at the hearing. In his letter, Tarr stated that he was attaching seventeen documents to his letter that outlined the relationship between the Darrow pit site in Louisiana and the Dura-Wood wood treatment operation in Alexandria. The trial court admitted this exhibit into evidence over defendants' objections of lack of authentication or foundation and hearsay. However, plaintiffs offered no testimony or other extrinsic evidence to authenticate any of the offered documents comprising exhibit P-1.
Additionally, while some of the documents contained in exhibit P-1 appear to be documents from Louisiana state agencies, these documents do not meet the necessary requirements to be self-authenticating. Louisiana Code of Evidence article 902 identifies which documents are to be considered self-authenticating, for which no extrinsic evidence of authenticity is required as a condition precedent to admissibility. Included in this list are certified Louisiana public documents. Specifically, La. C.E. art. 902(2)(b) provides:
A purported record, book, paper, or other document of the State of Louisiana, or of a department, board, or agency thereof or of a political subdivision of the state or a department, board, or agency of such a subdivision when certified as being the original by an officer or employee who identifies his official position and who either has custody of the document or who is otherwise authorized to make such a certification. (Emphasis added).
Regarding the self-authentication of copies of public documents, La. C.E. art. 904 provides:

*823 When an original public document is deemed authentic without proof by extrinsic evidence as provided in Article 902(1), (2), or (3), a purported copy of the document also shall be deemed authentic when certified as true or correct by the custodian or other person authorized to make that certification, by certificate complying with Article 902(1), (2), or (3).
The state documents contained in exhibit P-1 did not contain a certification as required to be self-authenticating. Accordingly, some other extrinsic evidence was necessary to authenticate these documents. But none was offered by plaintiffs.
Plaintiffs contend that some of the documents contained in exhibit P-1 are more than thirty years old and were properly authenticated as "ancient documents" pursuant to La. C.E. art. 901(B)(8). Subsection (B)(8) of La. C.E. art. 901 provides that a document may be authenticated where the evidence establishes that the document has been in existence for thirty years or more; was in a place where, if authentic, it would likely be; and is in such a condition as to create no suspicion concerning its authenticity.
However, with regard to the documents in question, plaintiffs only established that the date contained thereon was thirty years ago or longer. This fact alone is insufficient. Article 901(B)(8) does not provide that ancient documents are self-authenticating by mere virtue of their age. Rather, evidence as to the location where the document was kept and discovered and the condition in which it was discovered are necessary for authentication pursuant to La. C.E. art. 901(B)(8). In the instant case, plaintiffs offered no evidence as to the location from which, or source from whom, the documents were obtained.[4] Accordingly, plaintiffs failed to establish that the documents were in a place where they would likely be if authentic or that the documents were in such a condition that created no suspicion as to their authenticity. Thus, we must conclude that plaintiffs failed to authenticate the purported ancient documents contained in exhibit P-1 pursuant to the requirements of La. C.E. art. 901(B)(8).
For these reasons, we are constrained to conclude that plaintiffs failed to lay a proper foundation for admission of exhibit P-1, and the trial court erred in admitting it into evidence. See Newpark Resources, Inc., 96-0935 at pp. 5-6, 691 So.2d at 211. Accordingly, we pretermit discussion of defendants' argument that exhibit P-1 also constituted inadmissible hearsay.
With regard to exhibit P-2, on the other hand, at the direction of the trial court, plaintiffs replaced the copy of the 1973 Louisiana Department of Health letter offered at the hearing with a copy containing an official certification as a true and correct copy of official records of the Louisiana Department of Environmental Quality. Accordingly, exhibit P-2 was self-authenticating pursuant to La. C.E. art. 904. Nonetheless, defendants contend that, regardless of whether the document was certified by the authoring state agency, it derives from an investigation into facts and circumstances purportedly surrounding plaintiffs' allegations and is, therefore, inadmissible hearsay under La. C.E. art. 803(8)(b)(iv).
Louisiana Code of Evidence article 803(8)(a) provides that public records and reports of a state agency that set forth matters observed pursuant to the agency's *824 duties do not constitute hearsay. However, La. C.E. art. 803(8)(b)(iv) provides that factual findings made by a state agency as a result of an investigation of a particular complaint, case or incident constitute inadmissible hearsay. While exhibit P-2, a 1973 letter from G. Roy Hayes, Chief of the Section of Solid Waste and Vector Control of the Louisiana Department of Health, alludes to the fact that the disposal of "HEX" (HCB) waste in Ascension and Iberville Parishes was being investigated, we note that the document does not contain any factual finding of the Department of Health with regard to the investigation. Moreover, there is nothing to suggest that the investigation was the result of a particular complaint, as opposed to an investigation simply conducted pursuant to the agency's powers and duties as established by law. See La. C.E. art. 803(8)(a)(ii) & (iii) and Comment (i) of the Official Comments to Exception (8) (1988). Accordingly, we find no merit in defendants' contention that this certified public document constitutes inadmissible hearsay pursuant to La. C.E. art. 803(8)(b)(iv).
Thus, we conclude that, while the trial court erred in admitting exhibit P-1 into evidence, it did not err in admitting exhibit P-2 over defendants' authentication and hearsay objections. Defendants did not object to the relevance of exhibit P-2.

Denial of Exceptions of Improper Venue

(Assignments of Error Nos. 2 & 3)
Venue is a question of law, which is reviewed de novo by the appellate court. In re Medical Review Panel Proceedings for the Claim of Tinoco, 03-0272, p. 5 (La.App. 4 Cir. 9/17/03), 858 So.2d 99, 103. Moreover, where a legal error interdicts the fact-finding process and the record is otherwise complete, an appellate court should then conduct a de novo review of the record in rendering its decision. Bloomer v. Louisiana Workers' Compensation Corp., 99-0707, p. 3 (La.App. 1 Cir. 5/12/00), 767 So.2d 712, 715. Accordingly, we must review de novo defendants' contentions that the trial court erred in denying their exceptions of improper venue, without considering exhibit P-1, which was improperly admitted into evidence.
In these assignments of error, defendants contend that the trial court erred in accepting the allegations of plaintiffs' petitions over the uncontradicted testimony in denying their exceptions of improper venue.
The general rules for venue are contained in La. C.C.P. art. 42, which provides, in part, that a suit against a domestic corporation shall be brought in the parish where its registered office is located and that a suit against a foreign corporation licensed to do business in the state shall be brought in the parish where its primary business office or primary place of business in the state is located. La. C.C.P. art. 42(2) & (4); see Cacamo v. Liberty Mutual Fire Insurance Company, 99-3479, p. 4 (La.6/30/00), 764 So.2d 41, 44. Additionally, supplementary venue provisions are contained in La. C.C.P. arts. 71-85, and plaintiffs may choose any venue available under La. C.C.P. art. 42 or any other supplementary venue provided by law that fits the particular circumstances of their claims. Cacamo, 99-3479 at p. 5, 764 So.2d at 44.
Article 73, one of the supplementary venue provisions, provides that an action against joint or solidary obligors may be brought in a parish of proper venue, under Article 42 only, as to any obligor who is made a defendant. A plaintiff invoking the provisions of La. C.C.P. art. 73 must allege sufficient facts to prove that the chosen venue is the proper venue for at least one of the joint or solidary obligors. *825 Additionally, the plaintiff is also required to allege facts showing that the various defendants are in fact jointly or solidarily obligated. Strasner v. State, 99-1099, p. 7 (La.App. 1 Cir. 6/23/00), 762 So.2d 1206, 1211.
If grounds for an objection of improper venue do not appear on the face of the plaintiff's petition, the burden is on the defendant to offer evidence in support of his position. Jewell v. Dudley L. Moore Insurance Co., 95-2453, pp. 3-4 (La.App. 1 Cir. 6/28/96), 676 So.2d 223, 225; see also Michael F. Smith, CPA v. Alford, 04-0586, p. 3 (La.App. 1 Cir. 3/24/05), 906 So.2d 674. It is only when no evidence is introduced by the moving party on the trial of an exception that the allegations of the petition are accepted as true. See Vital v. State of Louisiana, 522 So.2d 151, 152 (La.App. 4 Cir.1988), and cases cited therein.
The trial court is not bound to accept as true allegations in a petition in a trial of an exception. See Delmore v. Hebert, 99-2061, p. 2 (La.App. 1 Cir. 9/22/00), 768 So.2d 251, 252-53. The Delmore court cited Bowers v. Orleans Parish School Board, 95-2530 (La.App. 4 Cir. 5/29/96), 694 So.2d 967, in support of this proposition. That court observed: "It is obvious that the trial court cannot be bound to accept the allegations of the petition as true and simultaneously hear evidence on those allegations!" Bowers, 95-2530 at pp. 8-9, 694 So.2d at 972.
Evidence is admissible to resolve the exception of improper venue. La. C.C.P. art. 930. "If evidence is admitted at such a hearing [pursuant to La. C.C.P. arts. 930 or 931], the exceptions must be resolved on the evidence presented, rather than on the allegations in the petition." Exposition Partner, L.L.P. v. King, LeBlanc & Bland, L.L.P., 03-0580, p. 10 (La.App. 4 Cir. 3/10/04), 869 So.2d 934, 941.
According to the allegations of the petitions, Vulcan and BFI are the only defendants for whom Ascension Parish might be a proper venue under La. C.C.P. art. 42, as both were alleged to be foreign corporations having their principal business establishments there. However, the defendants offered evidence establishing that, contrary to those allegations, BFI is a Delaware corporation with its principal business establishment in Baton Rouge, Louisiana, which is in East Baton Rouge Parish. Therefore, because Article 42 venue is proper in Ascension Parish only as to Vulcan, venue as to the other defendants would be proper there under La. C.C.P. art. 73 only if Vulcan is jointly or solidarily obligated with one of the other defendants.
The trial court found venue under La. C.C.P. art. 73, which says that an action against joint or solidary obligors may be brought in a parish of proper venue under La. C.C.P. art. 42 as to any co-obligor made a defendant. However, Roy O. Martin has established that Ascension Parish is not a parish of proper venue. While Roy O. Martin did not disprove that Vulcan had its principal business establishment in Ascension Parish, it put on uncontradicted evidence that there could be no joint and solidary liability between it and Vulcan. Roy O. Martin's expert testified that it never used any Vulcan by-products during applicable times.
The only relevant and admissible evidence in the record on the issue was presented in the testimony of Brad Stahlecker, the Environmental Health and Safety Manager for Vulcan. Mr. Stahlecker testified that Vulcan's Geismer facility has never produced pentachlorophenol. Further, Mr. Stahlecker testified that although HCB is a byproduct of Vulcan's operations, *826 Vulcan has never introduced it into commerce. He related that Vulcan's HCB has always been disposed of by the following methods: between 1968 and 1980, in on-site or off-site storage pits (the latter at the "Cleve Reber" facility); and since 1980, by on-site incineration. Mr. Stahlecker denied that any of Vulcan's HCB had ever been sent to BFI. Mr. Stahlecker's testimony was uncontradicted; plaintiffs offered no evidence that substantiated the allegations of their petition with respect to Vulcan. The fact that disposal of HCB in Ascension Parish was being investigated does not tend to prove that HCB from Vulcan went to Rapides Parish.
Based on the evidence adduced at the trial of the exception, without crediting allegations in the petition, Roy O. Martin has established by uncontradicted evidence that the premise for venue under La. C.C.P. art. 73, joint or solidary liability, is baseless. Accordingly, the exception of improper venue is maintained.
The jurisprudential rule has developed that, "when the plaintiff does not have sufficient knowledge to ascertain the correct venue or acts upon incorrect knowledge and erroneously files suit in the wrong venue, the case should be transferred to a court of proper venue pursuant to LSA-C.C.P. Art. 121. However, when the plaintiff knowingly files suit in the wrong venue, dismissal is proper." Marler v. Petty, 94-1851, p. 6 (La.4/10/95), 653 So.2d 1167, 1171. Here there is no contention that plaintiffs knowingly filed suit in the wrong venue, therefore we remand this matter to the trial court for transfer to a proper venue. See La. C.C.P. arts. 121 and 932 B.
Finding merit in this assignment of error, we reverse the four judgments on appeal. Further, because of our dispositions herein, we pretermit the defendants' remaining assignments of error on the appeal and vacate all other portions of the four separate judgments before us on appeal.

THE WRIT APPLICATIONS

2003 CW 2647
In this writ application filed by BFI, BFI assigns error to the trial court's denial of its exceptions of no cause of action, improper venue, vagueness, and non-conformity of the petition to the requirements of La. C.C.P. art. 891.
We find merit in BFI's argument that the trial court erred in denying its exception of improper venue for the reasons stated above. Accordingly, we similarly dispose of the judgment at issue. We reverse the judgment against BFI on that issue, vacate all other portions of this judgment, and remand for transfer to a court of proper venue.

2003 CW 2669
In this writ application, defendant Beazer East challenges the portion of the October 21, 2003 judgment against it denying its motion to transfer on the basis of forum non conveniens. In considering this writ application, we recognize that this court is "authorized and, indeed, required to render a judgment `which is just, legal, and proper upon the record on appeal."' Jackson National Life Insurance Company v. Kennedy-Fagan, 03-0054, p. 5 (La. App. 1 Cir. 2/6/04), 873 So.2d 44, 48, writ denied, 04-0600 (La.4/23/04), 870 So.2d 307; La. C.C.P. art. 2164. Also, courts of appeal have "plenary power to exercise supervisory jurisdiction over trial courts and may do so at any time, according to the discretion of the court." Campbell v. Markel American Ins. Co., 00-1448, p. 4 (La.App. 1 Cir. 9/21/01), 822 So.2d 617, 620. Further, under La. C.C.P. art. 123, courts may transfer a matter to a more *827 convenient forum where the action may have been brought "[f]or the convenience of the parties and the witnesses, in the interest of justice."
On the record before us, we are remanding the claims against all other defendants for transfer to a parish of proper venue. We recognize from the record and from our other dispositions in this case that it would be inconvenient and contrary to the interest of justice, if not impossible, for the action against Beazer East to continue in a separate forum from the other defendants.
Accordingly, we grant the writ, and in exercise of our plenary jurisdiction, we reverse the portion of the October 21, 2003 judgment against Beazer East denying the exceptions of improper venue. We vacate the remaining portions of the judgment. We remand this matter to the trial court to transfer this matter to a parish of proper venue, where Beazer East is specifically authorized to re-urge the exception of forum non conveniens or any other pertinent matter.

2003 CW 2670 & 2003 CW 2671
Because of the above dispositions, the issues raised in these writ applications are now moot. These issues are more properly considered by the court to which the case is transferred, should the defendants decide to re-urge their objections.

DECREE
For the foregoing reasons, we reverse the portions of the October 21, 2003 judgments on appeal denying the exceptions of improper venue filed by Dow, Roy O. Martin, Vulcan and Cos-Mar. We vacate all other portions of these four separate judgments. Further, we grant the writs on BFI's writ application 2003 CW 2647 and on Beazer East's writ application 2003 CW 2669, reverse the portions of the two October 21, 2003 judgments denying the exceptions of improper venue, and vacate the remaining portions of those judgments.
We remand these matters to the trial court for transfer to a court of proper venue, where the defendants are free to urge all objections on any unresolved issues once this matter is transferred. Costs of the appeal and writ applications are assessed against plaintiffs.
JUDGMENTS ON APPEAL DENYING EXCEPTIONS OF IMPROPER VENUE REVERSED; ALL OTHER PORTIONS OF THESE FOUR SEPARATE JUDGMENTS VACATED; WRITS 2003 CW 2647 & 2003 CW 2669 GRANTED, AND JUDGMENTS GIVING RISE TO THESE WRITS REVERSED IN PART AND VACATED IN PART; REMANDED FOR TRANSFER TO A PARISH OF PROPER VENUE; WRITS 2003 CW 2670 & 2003 CW 2671 NOT CONSIDERED.
WHIPPLE, J., dissents for the reasons assigned.
WHIPPLE, J., dissenting.
I respectfully disagree with the result reached by the majority herein. While I agree that the trial court erred in admitting exhibit P-1 into evidence, I nonetheless disagree with the majority's conclusion that defendants' exceptions of improper venue should have been maintained.
It is true that the trial court is not bound to accept the allegations of the petition as true where evidence is introduced at the trial of the exception. Delmore v. Hebert, 99-2061, p. 2 (La.App. 1st Cir.9/22/00), 768 So.2d 251, 252. Nonetheless, if grounds for an objection of improper venue do not appear on the face of the petition, the burden is on the defendant *828 to offer evidence in support of his position. Jewell v. Dudley L. Moore Insurance Co., 95-2453, pp. 3-4 (La.App. 1st Cir.6/28/96), 676 So.2d 223, 225, writ denied, 96-2015 (La.11/8/96), 683 So.2d 273. Thus, the burden was on defendants to offer evidence in support of their position, i.e., to offer evidence to establish that venue was not proper in Ascension Parish. To carry their burden of proof, defendants had to establish that Vulcan, the only Ascension Parish defendant, was not jointly or solidarily liable with the remaining defendants. I find that defendants have simply failed to carry their burden of proof in this regard.
Brad Stahlecker, the environmental health and safety manager for Vulcan, did testify that Vulcan never manufactured pentachlorophenal at its Geismar facility, and I agree that this testimony was uncontroverted. However, Stahlecker's testimony with regard to Vulcan's handling of HCB is significantly less convincingin fact, it establishes only that the defendant admittedly had no evidence to controvert the plaintiffs' position. Initially, Stahlecker testified that Vulcan handled its HCB waste by: storing it on site from 1968 to 1970; transporting it off site from 1970 to 1973 to a facility known as "Cleve Rebber"; again storing it on site from 1973 to 1980; and then, beginning in 1980, incinerating HCB on site. Stahlecker admitted that, based on his investigation (consisting of interviews with older employees and his check of old records) he concluded that Vulcan's Geismar facility had never disposed of HCB at BFI's Darrow pit. (The BFI Darrow pit is the connecting link among defendants who disposed of waste at that facility, JOC Oil in Texas who "recycled" waste from the Darrow pit, and Roy O. Martin who allegedly purchased hazardous "recycled" products from JOC.)
However, Stahlecker's testimony was totally discredited on cross-examination. Specifically, Stahlecker acknowledged that: (1) he was unaware (until plaintiffs showed the reports and records to him) that the Louisiana Department of Health had been supplied with information establishing that Vulcan disposed of materials at the BFI Darrow site from 1965 to 1971 and had so reported; and (2) that from the late 1960s to the early 1970s, Vulcan had no manifest system or written documentation to track where its HCB was disposed of.
Stahlecker also admitted that his testimony was not based on personal knowledge, but, rather, was based on his "investigation," which he testified consisted of questioning employees and reviewing company records dating back to 1968 (for which there were apparently none with regard to the company's disposal of HCB). He testified on cross-examination that a company named NEI Construction was the company that actually transported Vulcan's HCB off site (allegedly to the Cleve Rebber site only). However, Stahlecker's testimony that this material was sent only to Cleve Rebber was based strictly on what he was told by other employees as to what they could remember about where the HCB was disposed.
Despite Vulcan's lack of any written records showing where its HCB was disposed of from the late 1960s to the early 1970s, Stahlecker made no attempt in his investigation to ascertain from NEI where it actually disposed of Vulcan's HCB waste. Rather, as stated above, his testimony was based only on what he was told by fellow employees based on their recollection. Thus, I believe that Stahlecker's testimony was sufficiently discredited on cross-examination and that this testimony was insufficient for defendants to carry their burden of proving their claim that Vulcan could not be jointly or solidarily liable with the *829 other defendants herein and, thus, that venue was improper in Ascension Parish pursuant to LSA-C.C.P. art. 73.
Finding no error in the trial court's sound denial of defendants' remaining exceptions and motions at issue in these appeals and writ applications, I would affirm the four October 21, 2003 judgments on appeal and deny the writ applications challenging certain aspects of four of the six October 21, 2003 judgments.
Accordingly, I respectfully dissent.
NOTES
[1] Defendants also filed several other exceptions that are not relevant to or at issue in these proceedings.
[2] The overruling of a declinatory exception of improper venue is generally considered an appealable judgment because, although it is interlocutory (i.e., it does not determine the merits but only preliminary matters in the course of the action, see La. C.C.P. art. 1841), it may cause irreparable harm. See La. C.C.P. art. 2083. Patterson v. Alexander & Hamilton, Inc., 02-1230, p. 4 (La.App. 1 Cir. 4/2/03), 844 So.2d 412, 415; Frederic v. Zodiac Development, 02-1178, p. 3 n. 3 (La.App. 1 Cir. 2/14/03), 839 So.2d 448, 451 n. 3.
[3] See Price v. Roy O. Martin Lumber Company, 2004 CA 0227, 2003 CW 2647, 2003 CW 2669, 2003 CW 2671, 2003 CW 2670 (La.App. 1 Cir. 4/21/04) (unpublished writ action).
[4] We note that exhibit P-1 itself seems to suggest that plaintiffs' counsel received these documents from a third party, and not from the parties from which the documents allegedly originated.