GUIDRY, J,
|..¡Defendant, Citadel Insurance Company d/b/a GoAuto Insurance, appeals from a judgment of the trial court awarding plaintiff, Beverly Smith, damages as a result of an automobile accident with its insured, Darlene Shelmire. For the reasons that follow, we affirm.
*499 FACTS AND PROCEDURAL HISTORY
On July 27, 2010, the vehicle operated by Ms. Shelmire collided with the vehicle operated by Ms. Smith when Ms. Shelmire proceeded through the intersection of America Street and St. Charles Street in Baton Rouge, Louisiana without yielding the right of way. Thereafter, Ms. Smith filed a petition for damages, naming Ms. Shelmire and her insurer, Gramercy Insurance Company (Gramercy), as .defendants and asserting that she sustained injury as a result of the accident. Gramercy answered the petition generally denying the allegations contained therein and raising several defenses. On February 16, 2011, Gramercy filed a motion for summary judgment, asserting for the first time that there was no insurance coverage for Ms. Shelmire or the vehicle she was operating at the time of the accident, because her policy was cancelled as of 12:01 a.m. on July 20, 2010, for failure to pay premiums. Following a hearing on the motion, the trial court found in favor of Ms. Smith and denied Gramerc/s motion.
Thereafter, Citadel Insurance Company d/b/a GoAuto (GoAuto), as the legal successor to Gramercy, filed a motion to re-urge the motion for summary judgment, asserting that no coverage was afforded under the subject policy at the time of the accident in question because the policy was cancelled prior to the date of the accident for the insured’s failure to pay premiums. Following a hearing, however, the trial court signed a judgment denying GoAuto’s motion.
|4The matter proceeded to a bench trial on January 26, 2015. At the conclusion of Ms. Smith’s case-in-chief, GoAuto moved for an involuntary dismissal, asserting that Ms. Smith had failed to prove insurance coverage; however, the trial court denied the motion. At the conclusion of trial, the trial court took the matter under advisement and accepted post-trial memoranda. Thereafter, on February 6, 2015, the trial court ruled in favor of Ms. Smith, finding that there was a valid insurance policy in place at the time of the accident due to the fact that GoAuto never cancelled the insurance policy. Specifically, the trial court relied on the fact that Ms. Shelmire paid the premium in the afternoon on the date of the accident, that a few hours later, she reported the accident to GoAuto as having occurred earlier that morning, and despite this knowledge that Ms. Shelmire was making a claim for an accident that occurred during a time when it claimed she did not have coverage, GoAuto paid, the very next day, the claim submitted by Ms. Shelmire for her property damage. The trial court subsequently signed a judgment in conformity with its ruling, ordering GoAuto to pay Ms. Smith $15,000, representing its policy limits.
GoAuto now appeals from the trial court’s judgment.
DISCUSSION

Involuntary Dismissal

GoAuto first assigns as error the trial court’s denial of its motion for involuntary dismissal. Louisiana Code of Civil Procedure article 1672(B) provides:
In an action tried by the court without a jury, after the plaintiff Has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to. relief. The court may then determine , the facts and render judgment against the plaintiff and in favor óf the moving party or may. decline to ren *500 der any judgment until the close of all the evidence.
| ^Article 1672 affords the trial judge discretion to render or to decline to render any judgment until the close of all evidence. Benton v. Clay, 48,245, p. 20 (La.App. 2nd Cir.8/7/13), 123 So.3d 212, 225. Thus, the purely discretionary decision of a trial court to deny a motion for involuntary dismissal at the close of, a plaintiffs case leaves nothing to review on appeal. Townsend v. Delchamps, Inc., 94-1511, p. 2 n. 1 (La.App. 1st Cir.10/6/95), 671 So.2d 513, 514 n. 1, writ denied, 95-2648 (La.1/12/96), 667 So.2d 522.
In the instant case, the trial court, in its discretion, denied GoAuto’s motion to dismiss and heard all of the evidence presented in the matter before rendering its decision. Under these circumstances, and in accordance with the law detailed above, when the trial court has denied a motion for involuntary dismissal, there is nothing for this court to review on appeal. Accordingly, we find this assignment of error to be without merit.

Insurance Coverage

GoAuto next assigns as error the trial court’s determination' that an insurance policy provided by GoAuto to Ms. Shelmire was in. effect at the time of the accident at issue. Particularly, GoAuto contends that Auto Premium Assistance Company (APAC), the premium finance company that financed Ms. Shelmire’s premiums, followed La. R.S. 9:3550 in instructing GoAuto to cancel Ms. Shelmire’s policy for failure to pay her premium and that GoAu-to properly complied with its legal responsibility.
The burden of proving that an insurance policy has been cancelled for nonpayment of premium prior to the date of the accident giving rise to a claim under the policy is on the insurer. See Direct General Insurance Company of Louisiana v. Mongrue, 04-248, p. 6 (La.App. 5th Cir.8/31/04), 882 So.2d 620, 623 and Hale v. Corley, 36,911, p. 3 (La.App. 2nd Cir.3/5/03), 839 So.2d 1056, 1058; see also Alexander v. State Farm Mutual Automobile Insurance Company, 148 So.2d 898, 900-901 (La.App. 1st Cir.1962).
Louisiana Revised Statute 9:3550(G) provides a mechanism by which an insurance policy may be cancelled upon default by the insured. At the time of the alleged cancellation of the policy in July 2010, La. R.S. 9:3550(G) provided:
(1) When a premium finance agreement contains a power of attorney enabling the insurance premium finance company to cancel any insurance contract, or contracts, or endorsements' listed in the agreement, the insurance contract, or contracts, or endorsements shall not be canceled by the insurance premium finance company unless such cancellation is effectuated in accordance with this Subsection.
(2) Upon default of the insurance premium finance agreement by the debtor, the premium finance company shall mail or send an electronic notice of cancellation to the insured, at his last known mailing or electronic address as shown on the records ofithe insurance premium finance company. In the event the default is timely cured, the premium finance company shall, within three business days from the timé the default was cured, mail or send electronic notice of rescission of the cancellation notice to the insured, at his last known mailing or electronic address as shown on the records of the premium finance company and to all other parties who had previously been sent notice of cancellation. In the event the default is not timely cured as provided herein and the insurance policy is canceled pursuant to the *501 terms of the insurance premium finance agreement, a copy of the notice of cancellation of the insurance contract shall also be sent to the insurance agent negotiating the related insurance contract whose name and place of business appears on the insurance premium finance agreement. Such notice of cancellation shall also state the name of any governmental agency, holder of a security interest in the insured property, or third party also requiring notice of cancellation as shown on the insurance premium finance agreement.
(8) (a) Ten days after notice of cancellation has been mailed to the insured or fourteen days when notice is sent from outside of this state, if the default has not been cured, the insurance premium finance company may thereafter effect cancellation of such insurance contract, or contracts, or endorsements by sending to the insurer, by depositing in the mail or with a private carrier, or via electronic mail, within five business days after the date of cancellation, except when the. payment has been returned uncollected, a copy of the notice of cancellation together with a statement certifying that:[1]
(i) The premium finance agreement contains a valid power of attorney as provided in Paragraph (1) of this Subsection.
|7(ii) The premium finance agreement is in default and the default has not been timely cured.
(iii) Upon default, a notice of cancellation was sent to the insured as provided in Paragraph (2) of this Subsection, specifying the date of sending by the premium finance company to the insured.
(iv) Copies of the notice of cancellation were sent to all persons shown by the premium finance agreement to have an interest in any loss , which may occur thereunder, specifying the names and addresses of any governmental agencies, holders of a security, interest in the insured property, or third parties to whom the insurance premium finance company has sent notice of cancellation.
(b)(i) Upon receipt of such notice of cancellation and statement from the premium finance company, the insurer shall consider that cancellation of the insurance contract or contracts has been requested by the insured but without requiring the return of the insurance contract or contracts and the insurer may proceed to cancel such contract or contracts as provided in R.S. 22:885. The effective date of cancellation shall be as of 12:01 a.m. on the tenth day after the date of sending of the notice of cancellation as shown in said statement *502 furnished to the insurer by the premium finance company,
(c) The receipt of such notice of cancellation and statement by the insurer shall create a conclusive presumption that the facts stated in said notice and statement are correct, that the insurer is entitled to rely on such facts and that the cancellation of the insurance contract or contracts is concurred in and authorized by the insured. No liability of any nature whatsoever either in favor of the insured, any governmental agency, holder of a security interest in the insured property, or third party Shall be imposed upon the insurer as a result of any misstatement of fact contaiñed in said notice of cancellation or statement furnished by the insurance premium finance company to the insurer, or as a result of failure by the insured, any governmental agency, holder of a. security interest in the insured property, or third party to receive the notice of cancellation required by Paragraph (2) of | Rthis Subsection, or as a result of failure of the insurance premium finance company to comply with any of the requirements of this Subsection. Upon mailing of any unearned premium and unearned commission to the insurance premium finance company as soon as practicable following such cancellation, the insurer shall be fully discharged from all liability under the insurance contract or contracts for any loss occurring subsequent to the effective date of cancellation. [Emphasis added.]
Accordingly, while an insurance premium finance company may follow all of the requirements to’effectuate the cancellation of a policy of insurance for nonpayment of premiums, the insurer still has to act on the request for cancellation for the cancellation to be effective. See La. R.S. 9:3550(G)(3)(b)(i).
In the instant case, the trial court determined that although Ms. Shelmire failed to timely pay her premium, GoAuto never cancelled her insurance policy. According to the testimony in the record, Ms. Shelmire obtained a contract of insurance financed through APAC on June 30, 2010. However, when Ms. Shelmire failed to submit her July insurance premium payment, APAC sent a notice of cancellation on July 10, 2010. On July 20, <2010, APAC sent a letter to GoAuto requesting cancellation of the policy as of July 20, 2010, at 12:01 a.m. Thereafter, on July 27, 2010, at 2:17 p.m., Ms.. Shelmire made a payment on her policy at a GoAuto sales office, and GoAuto accepted the payment. On the same date, at 3:31 p,m., Ms, Shelmire called.GoAuto and reported that she had been involved in a motor vehicle accident occurring at 9:00 a.m. that morning. Ms. Shelmire also made a claim for property damage to her vehicle, which . GoAuto paid on July 28, 2010.
An employee of GoAuto, Kim McCloud, testified that GoAuto cancelled the policy for nonpayment of premiums pursuant to the request from APAC and reinstated the policy on July 27, 2010, at 2:17 p.m. According to Ms. McCloud, payment of the property damage claim was an error on the adjustor’s part, but she acknowledged that she had no personal knowledge as to why the claim was paid. [flMs. McCloud further stated that the time of the accident was not.'verifiéd by GoAuto until September 16, 2010, when it reeeived a copy of the accident report, which revealed that the actual time of the accident was at 7:32 a.m. Ms. McCloud stated that had GoAuto known that the accident occurred at 7:32 a.m., it would not have paid Ms. Shelmire’s property damage claim. '' However, Ms. McCloud acknowledged that when Ms. Shelmire called GoAuto at 3:30 p.m. on July 27, 2010, she informed them that the *503 accident occurred at about 9:00 a.m. that morning.
From our review of the record, we find no error in the trial court’s factual determination that''while Ms. Shelmire failed to timely pay her insurance premium, GoAuto never cancelled her policy. The only evidence presented in support of the contention that GoAuto actually can-celled the policy after receiving the request for cancellation from APAC is the testimony of Ms. McCloud.. However, Ms. McCloud’s testimony is not supported by any documentary evidence in the record, and the trial court clearly did not believe the reasons or-logic offered-by her, for which she had no personal knowledge, for GoAuto’s payment of a cláim for an accident that it asserts occurred during a time when Ms. Shelmire did not have coverage. When factual findings are based upon determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trier of fact’s findings. Johnson v. Magitt, 12-0200, p. 2 (La.App. 1st Cir.9/21/12), 111 So.3d 11, 12; see also Sperry v. Nationwide Mutual Fire Insurance Company, 05-0185, pp. 4-5 (La.App. 4th Cir.8/17/05), 915 So.2d 914, 917, writ denied, 05-2302 (La.3/10/06), 925 So.2d 518.
• Therefore, absent any credible evidence that GoAuto cancelled the policy at issue, and considering the evidence presented at trial that GoAuto subsequently processed and 'paid Ms. Shelmire’s property damage claim, we find no error in the Imtrial court’s determination that GoAuto did not cancel the insurance policy at issue.[2]
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court. All costs of this appeal are assessed to Citadel Insurance Company d/b/a GoAuto Insurance.
AFFIRMED.
HOLDRIDGE, J., concurs in the result.
CHUTZ, J., concurs.

. At the time of the alleged cancellation of the policy, La. R.S. 22:885, entitled Cancellation by the insured, provided in pertinent part:
A. Cancellation by the insured of any policy which by its terms may be cancelled at the insured's option or of any binder based on such policy may be effected by written notice thereof to the insurer and- surrender of the policy or binder for cancellation pri- or to or on the effective date of such cancellation.
B. Within thirty days following such cancellation the insurer shall pay to the insured or to the person entitled thereto as shown by the insurer’s records, any unearned portion of any premium paid on the policy as computed on the customary short rate or as otherwise stated in the policy, and any unearned commission. In the event the automobile insurance policy is canceled for nonpayment to the finance company, any unearned premium and commission • shall be- computed on a pro rata basis. If no premium has been paid on the policy, the insured shall be liable to the insurer for premium for the period during which the policy was in force.

. We note that Ms. McCloud also testified that GoAuto refunded unearned premiums to APAC. However, the record demonstrates that APAC sent Ms. Shelmire notices again in August and September regarding cancellation of her policy for failure to pay insurancé premiums. Additionally, while Angela Pittman, who is employed by GoAuto Management Services to do- premium finance for APAC, testified that GoAuto reimbursed to APAC any unearned premiums after the July 20, 2010 cancellation of Ms. Shelmire’s policy, her testimony was based on business records that were not offered into evidence at trial. Furthermore, the reliability of Ms. Pittman's business records was called into question when it was discovered at trial that the cancellation date on the September 2010 cancellation letter provided to Ms. Smith's counsel, bearing Ms. Pittman’s signature, differed from -an "original” letter contained in her file. Accordingly, given the complicated finance history of Ms. Shelmire's automobile insurance policy and the absence of any documentary evidence, it is unclear when GoAu-to issued any refund and what any supposed unearned premium refund was -based upon. Therefore, we find no error in the trial court’s apparent determination that this evidence is not sufficient to support a finding that GoAu-to cancelled the policy at issue. -