STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2022 CA 1241

WOLFE WASHAUER CONSTRUCTION, LLC

VERSUS

FELICIA DART

Judgment Rendered: ___DEC 0 4 2023___

Appealed from the
City Court of Baton Rouge
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. 18-06850

The Honorable Judy Moore Vendetto, Judge Presiding

| | |
|---|---|
| Daniel D. Holliday, III<br>Baton Rouge, Louisiana | Counsel for Plaintiff/Appellee,<br>*Wolfe Washauer Construction,*<br>*LLC* |
| Marcus J. Plaisance<br>Mark D. Plaisance<br>Prairieville, Louisiana<br>Richard Mary<br>Laura Mary<br>Baton Rouge, Louisiana | Counsel for Defendant/Appellant,<br>Felicia Dart |

BEFORE: GUIDRY, C.J., HOLDRIDGE, WOLFE, MILLER, AND
GREENE, JJ.

*Miller, J. Concur.*

*Wolfe, J. Dissents.*

*Greene, J. Dissents*

**MILLER, J.**

This matter is before us on appeal by defendant/appellant, Felicia Dart, from a judgment of the trial court in favor of plaintiff/appellee, Wolfe Washauer Construction, LLC. For the reasons that follow, we amend in part and affirm as amended.

### FACTS AND PROCEDURAL HISTORY

On February 22, 2018, Felicia Dart ("Dart") entered into a written contract with Wolfe Washauer Construction, LLC ("Wolfe") for renovations of the front porch, carport, and kitchen of Dart's house located in Baton Rouge, Louisiana. The contract stated that the renovations would be done for a total price of $112,065.00, which was to be paid in five installments. Dart made the first, second, and third payments as provided for in the contract. When invoiced for the fourth installment, Dart refused to pay because of the amount of outstanding work left to be done. Dart subsequently fired Wolfe and did not pay the remainder due on the contract.

On September 27, 2018, Wolfe filed a petition for breach of contract and damages, seeking $24,243.47[1] for breach of contract, all other damages, all costs of the proceedings, legal interest from the date of judicial demand until paid, and all other just and equitable relief. On October 22, 2018, Dart filed an answer wherein she denied Wolfe's allegations and contended that Wolfe did not substantially complete the work, portions of the work done by Wolfe were defective, and Wolfe did not pay subcontractors and materialmen. A trial was held on October 18, 2021, and the court ruled in favor of Wolfe, and against Dart, in the amount of $21,178.47, together with legal interest thereon from the date of judicial demand until paid, and all costs of the proceedings. The judgment was signed by the trial court on April 1, 2022.

---

[1] The amount unpaid on the original contract was $28,065.00. There was $7,934.01 in allowances owed to Dart, and Wolfe alleges that Dart owed it $4,112.48 pursuant to extra work done on the project. Thus, Wolfe contended that the amount due under the contract was $24,243.47.

2

Dart filed a motion for new trial. After a telephone status conference, the trial court denied the motion for new trial. A judgment to that effect was signed on August 11, 2022. Subsequently, Dart filed a motion and order for appeal, which was signed by the trial court on September 13, 2022.

## ASSIGNMENTS OF ERROR

Dart contends that (1) the trial court erred in admitting into evidence the certificate of occupancy; (2) the trial court erred in denying Dart's motion for involuntary dismissal; and (3) the trial court erred by awarding Wolfe payment under the contract rather than offsetting such payment by Dart's expense to remedy.

## DISCUSSION

In her first assignment of error, Dart challenges an evidentiary ruling of the trial court. If a trial court commits an evidentiary error that interdicts its factfinding process, this court must conduct a *de novo* review. Landry v. City of Mandeville, 2021-1362 (La. App. 1st Cir. 4/27/22), 342 So. 3d 337, 346, writ denied, 2022-00828 (La. 9/27/22), 347 So. 3d 155. Thus, any alleged evidentiary errors must be addressed first on appeal, inasmuch as a finding of error may affect the applicable standard of review. Id.

At trial, Wolfe attempted to admit Exhibit P-6, an email chain with a purported copy of the certificate of occupancy attached, through the testimony of Wolfe Washauer ("Washauer"), the owner of Wolfe. Dart objected to the introduction of the email chain and the certificate of occupancy as hearsay and argued that a representative was needed to authenticate the document. Dart contended that a proper foundation was not laid under La. C.E. art. 803 because there was no testimony that the certificate of occupancy was a governmental

3

document from anyone qualified to testify to its creation.[2] In response, Wolfe argued that the certificate of occupancy fell under two exceptions to the hearsay rule, the records of regularly conducted business activity exception and the public records and reports exception. The trial court overruled Dart's objection and admitted the certificate of occupancy under the public records and reports exception. See La. C.E. art. 803(8). Dart then made a general objection as to any testimony regarding the certificate of occupancy.

It is well-settled that a trial court is afforded vast discretion with regard to evidentiary rulings, and the court's decision to admit or deny evidence will not be disturbed on appeal absent a clear abuse of that discretion. Cantrelle v. Lafourche Parish Council, 2021-0678 (La. App. 1st Cir. 2/1/22), 340 So. 3d 1059, 1076. Dart contends that the trial court erred in admitting the certificate of occupancy because it was not authenticated or self-authenticating under Chapter 9 of the Louisiana Code of Evidence and it does not fall within the public records and reports exception or the records of regularly conducted business activity exception under La. C.E. art. 803.

Authentication of evidence is required in order for evidence to be admissible at trial. See La. C.E. art. 901. Because authentication of evidence is a condition precedent to admissibility, an exhibit that is not authenticated does not constitute competent evidence. See La. C.E. art. 901; Price v. Roy O. Martin Lumber Co., 2004-0227 (La. App. 1st Cir. 4/27/05), 915 So. 2d 816, 822, writ denied, 2005-1390 (La. 1/27/06), 922 So. 2d 543. Authentication is a process whereby something is shown to be what it purports to be. See La. C.E. art. 901. Evidence

[2] As is true of the exception for business records, the public records exception is premised generally on the assumption that either the record keeper, the record maker, or the person who supplied the information contained in the record had firsthand knowledge of the facts placed there. Thus, at least as regards information falling within the "regular activities" and "matters observed" categories of Parts (i) and (ii) of Subparagraph (a), this Article implicitly imposes a requirement of firsthand knowledge on the part of the person who was the source of the information, and a requirement that he have been acting routinely on behalf of the agency in making the report. La. C.E. art. 803, Comments to Exception (8)--1988(d).

4

must either be authenticated as provided in La. C.E. art. 901, or it must be self-authenticating. Price, 915 So. 2d at 822; see La. C.E. art. 902. Washauer is not a proper witness to authenticate the copy of the certificate of occupancy. He did not create the email or the certificate of occupancy.

Additionally, while the certificate of occupancy in Exhibit P-6 appears to be a document from East Baton Rouge, Permits and Inspection Division, City of Baton Rouge - Parish of East Baton Rouge, it does not meet the necessary requirements to be self-authenticating. For example, it does not contain a seal, it does not contain a signature of an officer or employee in his official capacity, it was not certified as being the original by an officer or employee, nor does it fall within any other class of self-authenticating documents under La. C.E. art. 902. Therefore, we find that Wolfe failed to authenticate the certificate of occupancy contained in Exhibit P-6, and the trial court abused its discretion in admitting it.

Yet, in spite of the jockeying to admit or exclude the purported certificate, the fact that a certificate had been issued was not in dispute. Both parties testified to the fact that a certificate of occupancy was issued.[3] Even so, the receipt of a certificate of occupancy is not equivalent to a finding of substantial performance. For example, a home may be occupied for the entirety of certain home improvement projects even while the work is not substantially performed. Here, the certificate of occupancy is relevant because it was an agreed upon benchmark for payment under the contract.[4] However, the certificate does not prove substantial performance. Therefore, any error in admitting the certificate at trial did

---

[3] During the trial, Dart was asked, "Now, you got the certificate of occupancy right?" Dart replied, "Correct."

[4] The contract provided:

> The forth [sic] payment of $25,000.00 Dollars when Certificate of Occupancy is issued.

5

not interdict the factfinding process and does not obligate this court to conduct a *de novo* review.

In her second assignment of error, Dart contends that the trial court erred in denying her motion for involuntary dismissal. Louisiana Code of Civil Procedure article 1672(B) states:

> In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

Article 1672 affords the trial judge discretion to render or to decline to render any judgment until the close of all evidence. Smith v. Gramercy Ins. Co., 2015-0845 (La. App. 1st Cir. 3/10/16), 189 So. 3d 497, 500. The purely discretionary decision of a trial court to deny a motion for involuntary dismissal at the close of a plaintiff's case and then render a decision after hearing all of the evidence presented in the matter leaves nothing for this court to review on appeal concerning the motion for involuntary dismissal. Escobar v. Cajun Operating Company, 2016-0558 (La. App. 1st Cir. 12/22/16), 209 So. 3d 198, 200. Accordingly, we find no merit to this assignment of error.

In her third assignment of error, Dart contends that the trial court erred in awarding Wolfe full payment under the contract rather than reducing the payment by Dart's expense to remedy since she was required to hire additional workers to complete the work Wolfe failed to complete. Under Louisiana jurisprudence, a building contractor or subcontractor may recover the contract price even though defects and omissions are present after he has substantially performed the building contract. Cosman v. Cabrera, 2009-0265 (La. App. 1st Cir. 10/23/09), 28 So. 3d 1075, 1080. However, where the owner presents evidence of the cost of completion

6

of the work or correction of defective work, the contract price may be reduced by that amount. Id. at 1080.

"Substantial performance" means that the construction is fit for the purposes intended despite the deficiencies; this is typically a question of fact for the trial judge.[5] Mayeaux v. McInnis, 2000-1540 (La. App. 1st Cir. 9/28/01), 809 So. 2d 310, 313, writ denied, 2001-3286 (La. 3/8/02), 810 So. 2d 1164. The factors to consider in determining whether there has been substantial performance include the extent of the defect or non-performance, the degree to which the purpose of the contract is defeated, the ease of correction, and the use or benefit to the owner of the work already performed. Cosman, 28 So. 3d at 1080-81. The contractor bears the burden of proving substantial performance. Garcia Roofing Replacement, LLC v. McCain, 2022-0233 (La. App. 1st Cir. 9/16/22), 352 So. 3d 1005, 1009.

In making its ruling, the trial court apparently based its finding of substantial performance largely on the fact that a certificate of occupancy was issued, while noting several inadequacies in the work. As previously explained, the issuance of a certificate of occupancy in and of itself does not prove substantial performance. The trial court's finding of substantial performance of the contract based primarily on the certificate was erroneous. However, in our review of the record in its entirety, we find a reasonable factual basis to conclude, as did the trial court, that the project was substantially performed.

At the trial, Washauer testified as to the work completed and the work which remained unfinished. Washauer testified that the scope of the project included adding a carport, adding a front porch, and closing in the existing front porch. Wolfe introduced an estimate spreadsheet with the cost of the work to be done. The

---

[5] To reverse a fact finder's determination, an appellate court must review the record in its entirety and find that a reasonable factual basis does not exist for the finding and further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Jackson v. Tulane Medical Center Hosp. and Clinic, 2005-1594 (La. 10/17/06), 942 So. 2d 509, 512-13.

7

estimate included sitework, foundation, framing, electrical, HVAC, plumbing, shutters, roof, windows, exterior doors, exterior walls, insulation, sheetrock, painting, interior doors and trim, flooring, cabinets, bathroom finishes, appliances, driveway, and clean up. The drawings depicted the same scope of work provided for in the estimate. The price of the entire project totaled $112,065.00, and the benchmarks for payment for the second and third installments were the completion of the framing and the sheetrock installation. That work was completed and Dart made those payments. Further, Washauer testified that the HVAC work was completed.

Washauer also testified that Wolfe installed the flooring and shoe molding in the house. However, Dart introduced pictures of her home that showed the subflooring was still visible in some places. When Washauer was asked about the unfinished floors, he alleged that he did not recognize the flooring. He further stated that the subflooring "could be somebody's finished floor if they wanted the Advantech [subflooring]." He also testified that the unfinished work included caulking, painting, installing brick steps, adjusting the cabinets, framing for and installing a window, and installing the backsplash.[6]

Dart also testified as to the work completed and the work which remained. During her testimony, more than twenty photos were introduced to prove the necessity of completion. She stated that the roofing and carport were completed, although she was not happy with how the carport posts were situated and she had issues with the roof. Dart further stated that, when the certificate of occupancy was issued, some of the subflooring was still exposed, the porch was not painted, the paint on the outside of the house was not satisfactory, the kitchen window and backsplash were not installed, gaps were not caulked and paint was missing around

---

[6] In an email dated August 15, 2018, Washauer stated that the following work still needed to be done: paint the front porch, install the gutters, install the drainage, install the front door knob, and punch out the house.

the house, the brick steps were not installed, the chandelier was not centered, and drainage was not done. She also stated that there was work included under the contract that she paid for but was not done. That work included: removing old concrete and pouring new concrete, windows that were taken out of the design, plumbing for running gas lines, and field dirt.

While we agree with the trial court that there was substantial performance, we find that there were deficiencies and incomplete work that Dart had to remedy, and the trial court erred in failing to reduce the amount due on the contract. Thus, Wolfe may recover the outstanding amount due on the contract reduced by Dart's cost of completion of the work or correction of defective work.

Initially, Dart is entitled to a credit for unused allowances. On August 6, 2018, Washauer emailed Dart and stated that Wolfe owed her credits on her final payment for unused allowances.[7] He indicated that Dart was owed the following credits: $1,000.00 for electrical; $2,500.00 for plumbing; $934.01 for hardware; and $3,500.00 for appliances. The total amount of the credits for the unused allowances is $7,934.01.

A party seeking to have the contract price reduced by an amount to perfect or complete work done under the contract bears the burden of proving the necessity of such perfection or completion and its cost. O & M Const., Inc. v. State, Div. of Admin., 91-1136 (La. App. 1st Cir. 3/2/91), 576 So. 2d 1030, 1039, writ denied, (La. 1991), 581 So. 2d 691. At the trial, Dart introduced emails, photos of incomplete work around the house, photos of damage to the house during

---

[7] Also, in the email dated August 6, 2018, Washauer stated that Dart owed Wolfe $4,112.48 for work that was outside the scope of the contract. However, Washauer testified multiple times that if additional work was required, a change order had to be executed. The need for a change order to execute additional work is also provided for in the contract. Washauer testified that if he was able to do the job for less, it was the same price, and if he went over, he was responsible. When asked more specifically about items that Dart paid for that were not completed, Washauer testified that "[t]his is not a Cost Plus contract it's a lump sum and that's . . . and Ms. Dart is trying to make this a Cost Plus contract and it's a lump sum." No change order wherein the parties agreed to this additional work being done was executed. Thus, we find Washauer's contention that he is owed $4,112.48 to be unsupported.

construction, a lien placed on the house by the company who sold and installed the kitchen countertop, and a spreadsheet, receipts, invoices, credit card statements, and copied checks. These exhibits were admitted by the trial court. However, the trial court found that while Dart provided a list of items that she paid for after Wolfe was fired, there were no witnesses to tell the court the amount it would have cost to redo or complete the job.

The trial court erred in finding that Dart did not prove the necessity of completion and its cost. We find that the deficient and incomplete work consisted of installing a window, installing brick steps, installing gutters, and cleaning. The parties agreed to the fact that the window and the brick steps were outstanding. Further, the gutters and cleaning were both provided for in the contract, not completed by Wolfe, and subsequently completed by Dart.

In addition to proving the necessity of completion, Dart met her burden of proving the cost of completion. She provided evidence of the amounts she incurred and payments she made to complete the outstanding work by introducing a spreadsheet, receipts, invoices, credit card statements, and copied checks. Washauer did not dispute these amounts. She paid $975.00 for the window, $3,250.00 for the brick steps, $1,047.20 for the gutters, and $1,950.00 for cleaning[8]. The total amount that Dart paid to complete the outstanding work was $7,222.20.[9] We note that this amount appears to be much less than what was due under the contract to complete what was clearly unfinished. Since Dart proved that

---

[8] $1,950.00 included "floor boards, attic cleaning, and etc."

[9] There are other expenses that Dart incurred to fix and complete her renovation project. However, those other expenses were either not a part of the contract or it is indeterminable if they were a part of the contract. For example, Dart paid $9,240.00 for drainage, a walking path, and landscaping. Drainage was part of the scope of work under the contract, but the walking path and landscaping were not. Because there is no individual itemization of each item, we cannot determine how much Dart paid for drainage. When the owner fails to establish the cost of correcting any defects, she may not recover therefor. Garcia Roofing Replacement, LLC, 352 So. 3d at 1011. Thus, this amount is not included in the amount that Dart paid to complete the work.

the cost of completion of the work was $7,222.20, the contract price will be reduced by that amount.

In summary, Dart did not pay the fourth or fifth payments due under the contract, which total $28,065.00. The total amount of the credits for the unused allowances is $7,934.01. When the credits for the unused allowances are subtracted from the outstanding amount due on the contract, there remains a balance of $20,130.99 due under the contract. When the cost of completion of the work, $7,222.20, is subtracted from the amount due on the contract, $20,130.99, there is a remaining balance of $12,908.79 due on the contract. Therefore, after the credits for the unused allowances and the cost of completion of the work are taken into consideration, Dart owes Wolfe $12,908.79 on the contract.

## CONCLUSION

Based on the above and foregoing reasons, the April 1, 2022 judgment of the trial court is amended to provide that there be judgment in favor of plaintiff, Wolfe Washauer Construction, LLC, and against defendant, Felicia Dart, in the amount of **TWELVE THOUSAND NINE HUNDRED EIGHT DOLLARS AND 79/00 ($12,908.79)** together with legal interest thereon from the date of judicial demand until paid. The judgment is affirmed as amended. Costs of this appeal are assessed one-half against Wolfe Washauer Construction, LLC and one-half against Felicia Dart.

**AMENDED AND AFFIRMED AS AMENDED.**

11